805 F.2d 440
 55 USLW 2290, 15 Collier Bankr.Cas.2d 1375,
Bankr. L. Rep. P 71,511
 In re CORPORACION de SERVICIOS MEDICOS HOSPITALARIOS de
FAJARDO, Debtor.
CORPORACION de SERVICIOS MEDICOS HOSPITALARIOS de FAJARDO,
Plaintiff, Appellee,
v.
Hon. Luis Izquierdo MORA, etc., et al., Defendants, Appellants.
 No. 86-1451.
 United States Court of Appeals,
First Circuit.
 Heard Sept. 12, 1986.
Decided Nov. 10, 1986.
 
 Marcos A. Ramirez Lavandero, with whom Ramirez & Ramirez and Maria Luisa Contreras, Hato Rey, P.R., were on brief, for defendants, appellants.
 George A. Davidson, with whom Bradley J. Andreozzi, Hughes Hubbard & Reed, New York City, Virgilio Mendez Cuesta, Rio Piedras, P.R., and Hector Urgell Cuebas, were on brief, for plaintiff, appellee.
 Before CAMPBELL, Chief Judge, COFFIN and BOWNES, Circuit Judges.
 COFFIN, Circuit Judge.
 
 
 1
 This case raises important issues of first impression regarding the scope of the police power exception to the Bankruptcy Code's automatic stay and the ability of debtors to assume contracts for the provision of governmental services. 11 U.S.C. Secs. 362(b)(4), 365. The Department of Health for the Commonwealth of Puerto Rico ("Department"), represented by Secretary of Health Luis Izquierdo Mora ("Secretary"), appeals the district court's affirmance of two orders issued by the bankruptcy court in the course of Chapter 11 proceedings initiated by appellee, Corporacion de Servicios Medicos Hospitalarios de Fajardo ("Corporacion"). One order permitted Corporacion to assume a lucrative hospital administration contract that it entered with the Department in 1982. The other order enjoined the Department of Health from continuing license revocation proceedings against Corporacion. We affirm the first order and hold that the issues raised by the second order are moot.
 
 
 2
 I. Factual Setting.
 
 
 3
 The events giving rise to this appeal commenced on December 1, 1982 when Corporacion, a private corporation, entered into a ten-year contract with the Department to operate the Fajardo Subregional Hospital. The contract grew out of a Puerto Rican legislative effort during the mid-1970s to reduce the Department's role as health care provider and install private administrators to operate the formerly public hospitals. See P.R. Laws Ann. tit. 24, Secs. 337, 337d. The terms of the contract obligated the Department to pay Corporacion a fixed annual fee, totalling several million dollars each year, for the care of indigent patients. Corporacion was also entitled to receive sums from paying patients and third-party sources such as Medicare and Blue Cross/Blue Shield. Operation of the Fajardo Subregional Hospital was Corporacion's only business and the contract with the Department was its principal asset.
 
 
 4
 During March 1985, following the issuance of reports by an auditing firm and an advisory team appointed to evaluate Corporacion's performance under the contract, newly installed Secretary of Health Izquierdo Mora sought to terminate the Department's contract with Corporacion. On April 30, 1985, he filed suit seeking to have the Commonwealth Superior Court declare Corporacion in default and rescind the contract. Corporacion, however, filed a petition for reorganization under Chapter 11 of the Bankruptcy Code on May 10, 1985. It continued to perform the contract and receive payments from the Department even after filing for bankruptcy.
 
 
 5
 On July 12, 1985, upon motion by the Secretary, the bankruptcy court issued an order pursuant to 28 U.S.C. Sec. 1334(c)(2) abstaining from jurisdiction over the contract matter only "as to the Request for Declaratory Judgment" made before the Commonwealth court. The contract action continued, therefore, until November 1, 1985, when the Commonwealth court filed its decision purporting to dissolve the contract and force Corporacion to surrender the hospital and other equipment to the Department. The next morning, without notice to the bankruptcy court, the Department forcibly seized control of the hospital from Corporacion. Just over two weeks later, on November 18, Corporacion moved the bankruptcy court for permission to assume the contract and offered assurances of cure and future performance as required by section 365(b)(1) for contracts in default. Following an evidentiary hearing regarding the adequacy of these assurances, the bankruptcy court granted Corporacion's motion on January 24, 1986. The district court affirmed this order on April 15, 1986, and also enjoined the Secretary "from further prosecuting this matter in any other forum not having bankruptcy jurisdiction."
 
 
 6
 In addition to initiating the contract action in Commonwealth court, Secretary Izquierdo also attempted to revoke or suspend Corporacion's license to operate the hospital by commencing an administrative proceeding in early June, 1985. Prior to the hearing date, however, Corporacion secured a temporary restraining order from the bankruptcy court to block the proceedings. Following two days of hearings and a personal inspection of the hospital, the bankruptcy judge stayed the license revocation proceeding pending the outcome of the Department's previously filed contract action. The district court also affirmed this decision in its order of April 15, 1986, 60 B.R. 920.
 
 
 7
 In light of the district court's order, the Department returned administration of the hospital to Corporacion on April 27, 1986, two days after we refused to grant the Secretary's motion for stay pending appeal. On June 30, 1986, Corporacion's license to operate the hospital expired by its own terms. The Department, however, reviewed Corporacion's new application, conducted an inspection of the hospital, and issued a new license permitting Corporacion to operate the hospital from July 1, 1986 to June 30, 1988.
 
 
 8
 II. Assumption of the Contract.
 
 
 9
 Appellant first contends that the district court improperly reviewed the abstention order issued by the bankruptcy court and, more generally, that the district court erroneously affirmed the bankruptcy court's order permitting Corporacion to assume the hospital administration contract. Appellant's basic position on the assumption issue is that the judgment of the Commonwealth court terminated the contract and that, therefore, there was no executory contract for Corporacion to assume after November 1, 1985. This argument fails, however, because the actions of the Commonwealth court violated the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. Sec. 362, and did not escape operation of the stay by virtue of the "police power" exception contained in section 362(b)(4). We also hold, contrary to appellant's assertion, that appellee satisfied all the requirements for assumption of an executory contract pursuant to section 365 and, specifically, offered adequate assurances of cure and future performance as required by section 365(b)(1). We address each of these issues in turn.
 
 
 10
 A. Review of the Abstention Order.
 
 
 11
 As a preliminary matter, we must address appellant's claim that it was improper for the district court to review the bankruptcy court's abstention order in the course of permitting assumption of the contract. In support of its contention, appellant cites the express language of the abstention statute, which states that "[a]ny decision to abstain made under this subsection is not reviewable by appeal or otherwise." 28 U.S.C. Sec. 1334(c)(2). The district court, relying on In re Cash Currency Exchange, Inc., 37 B.R. 617 (N.D.Ill.1984), aff'd, 762 F.2d 542, 545 (7th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985), purported to review not the actual decision to abstain, but rather the jurisdictional basis for the abstention order.[1] It determined that the bankruptcy court lacked authority to abstain because the action before the Commonwealth court was a proceeding "arising under" title 11 of the United States Code. See 28 U.S.C. Sec. 157(b)(2). Accordingly, it found that the abstention order had issued in violation of the Code's automatic stay provisions, 11 U.S.C. Sec. 362(a), and was therefore null and void.
 
 
 12
 Without determining the validity of the approach taken by the district court, we believe that there are two independent grounds for upholding the result reached below. First, we believe a strong case can be made for the proposition that, because of the statutory amendments following the Supreme Court's ruling in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the bankruptcy court lacked jurisdiction to issue an abstention order without the authorization of the district court. The powers of a bankruptcy court, as enumerated in 28 U.S.C. Sec. 157, are limited to the "authority ... conferred upon the court under ... [the Bankruptcy Code]." 11 U.S.C. Sec. 105(c). A bankruptcy judge, therefore, may enter "appropriate orders and judgments", 28 U.S.C. Sec. 157(b)(1), only in "core" proceedings "arising under" title 11. See 28 U.S.C. Sec. 157(b)(2) (inclusive list of "core" proceedings). In other cases the bankruptcy judge can do no more than "submit findings of fact and conclusions of law to the district court." 28 U.S.C. Sec. 157(c).
 
 
 13
 As recently recognized by the Advisory Committee on Bankruptcy Rules, which is charged with the task of drafting the post-Marathon amendments to the Bankruptcy Rules, decisions to abstain pursuant to 28 U.S.C. Sec. 1334(c)(2) do not, by definition, involve matters "arising under" title 11 and, therefore, only district courts possess the jurisdictional authority to issue such orders. See Proposed Bankruptcy Rule 5011(b) (permitting bankruptcy court to hear motion for abstention and file report and recommendation with district court). Indeed, section 1334(c)(2) states that "the district court shall abstain from hearing such proceeding...." 28 U.S.C. Sec. 1334(c)(2) (emphasis supplied). In the case at bar, therefore, we do not believe the district court erred in reviewing the abstention order of the bankruptcy court. On the contrary, we are persuaded that the constitutional status of bankruptcy courts and the Bankruptcy Code itself compel district courts to undertake such review.
 
 
 14
 Nevertheless, we are reluctant to rest our decision on this ground alone, although we find it dispositive, because the issue was neither briefed nor argued by the parties on appeal. Even if we were to accept the premise that district courts may not review abstention orders directly, however, an alternative theory exists that adequately supports the result reached below and renders harmless any error committed by the district court. Appellee argues, correctly in our view, that the bankruptcy court's order in this case was carefully circumscribed and did not permit the Commonwealth court to enter and enforce judgment against the property of the estate. Responding to the Secretary's "Request for Declaratory Judgment and Injunction" pending before the Commonwealth court, the bankruptcy court abstained only "as to the Request for Declaratory Judgment" and further provided that "such abstention is not a waiver of the exclusive jurisdiction over the property of the debtor estate under 28 U.S.C. [Sec.] 1134(d) nor the granting of relief from the automatic stay of 11 U.S.C. [Sec.] 362(a) except as expressly indicated by this order."[2] Regardless of whether the bankruptcy court properly granted the abstention order pursuant to section 1334(c)(2), we do not read its language as a total and unconditional abstention permitting the Commonwealth court to enjoin appellee's conduct, terminate the contract, and authorize the Department's takeover of the hospital. Rather, the bankruptcy court abstained only as to the declaration of the parties' contractual rights under Puerto Rico law and the Commonwealth court lacked subject matter jurisdiction to issue any orders except a declaratory judgment.[3]
 
 
 15
 B. Violation of the Automatic Stay.
 
 
 16
 Despite our alternative holdings that the abstention order was either improperly issued or too narrow to permit contract termination, appellant contends that the provisions of section 362(a) did not automatically stay its contract action before the Commonwealth court. It finds support for this position in the "police power" exception to the automatic stay enumerated in section 362(b)(4), (5). Section 362 provides in relevant part:
 
 
 17
 (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title ... operates as a stay, applicable to all entities, of--
 
 
 18
 (1) the commencement or continuation ... of a judicial, administrative or other action or proceeding against debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
 
 
 19
 (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
 
 
 20
 (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; ...
 
 
 21
 (b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay--
 
 
 22
 * * *
 
 
 23
 (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;
 
 
 24
 (5) under subsection (a)(2) of this section, of the enforcement of a judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; ....
 
 
 25
 11 U.S.C. Sec. 362 (emphasis provided). The Department contends that the contract termination suit it filed in Commonwealth court was "an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." 11 U.S.C. Sec. 362(b)(4). We disagree.
 
 
 26
 We begin by stating the obvious. First, "the stay provisions of 11 U.S.C. Sec. 362(a) do not always operate automatically." Cournoyer v. Town of Lincoln, 790 F.2d 971, 974 (1st Cir.1986). Second, we do not doubt that one of the purposes animating section 362(b)(4) is the protection of public health and safety. See Midlantic National Bank v. New Jersey Department of Environmental Protection, --- U.S. ----, 106 S.Ct. 755, 761, 88 L.Ed.2d 859 (1985). It is apparent from the legislative history, however, that Congress intended the section 362(b)(4) exception to apply exclusively to actions enforcing generally applicable regulatory laws governing the behavior of debtors:
 
 
 27
 Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such law, the action or proceeding is not stayed under the automatic stay.
 
 
 28
 H.R.Rep. No. 595, 95th Cong., 1st Sess. 343 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6299 [hereinafter House Report]; S.Rep. No. 989, 95th Cong., 2d Sess. 52, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5838 [hereinafter Senate Report]. Nowhere is it mentioned that section 362(b)(4) permits government agencies to enforce contractual rights against debtors without first seeking relief from the automatic stay.[4] Nor has appellant cited any cases holding that actions by a governmental agency to enforce contractual rights, even if related to the agency's general regulatory power, are exempt from the automatic stay.[5] See In re Adana Mortgage Bankers, Inc., 12 B.R. 989, 1000 (Bankr.N.D.Ga.1980), vacated as moot by stipulation, 687 F.2d 344 (11th Cir.1982) (holding that a government corporation, "[w]ith respect to actually implementing its contractual remedies after the [debtor] has filed for relief under Chapter 11 of the Bankruptcy Code, ... is in the same position as any other party in interest.").
 
 
 29
 The alleged breach of contract by Corporacion and the Department's subsequent decision to bring suit did not directly involve the enforcement of generally applicable regulatory laws. If the Department had reason to believe that appellee was in violation of applicable health or safety regulations, then it could have taken steps immediately to revoke appellee's license to operate the hospital. See P.R. Laws Ann. tit. 24, Sec. 333g. Instead, the Department sought to have the Commonwealth court enforce rights created by the contract it entered with Corporacion in 1982. Appellant now contends that appellee's mismanagement of the Fajardo Hospital had produced utter chaos and a serious threat to the health and safety of citizens served by that facility. The fact remains, however, that the Department did not initiate proceedings to revoke appellee's license until several weeks after filing suit in Commonwealth court.[6] This decision by the Department to pursue its contractual remedies, rather than exercise its broad police and regulatory power at the outset, suggests to us that the threat to the health and safety of the citizens served by the Fajardo Subregional Hospital was not as great as appellant would have us believe.[7] We also note, moreover, that appellant's characterization of appellee's performance is contradicted by both a personal inspection of the hospital by the bankruptcy judge[8] on August 1, 1985, and a Medicare compliance inspection conducted by the Health Care Financing Administration of the United States Department of Health and Human Services[9] on October 21 and 22, 1985, just over a week before the Department seized control of the facility.
 
 
 30
 The Department's decision to forgo direct enforcement of its regulatory powers and seek direct termination of the contract was also potentially disastrous to the estate. The contract termination suit threatened to deprive Corporacion of its principal asset, jeopardize its only opportunity for reorganization, and force it into chapter 7 liquidation proceedings. In light of the Supreme Court's statement that "the policy of Chapter 11 is to permit successful rehabilitation of debtors," NLRB v. Bildisco & Bildisco, 465 U.S. 513, 527, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984), we simply cannot accept the Department's characterization of its contract action as an exercise of its "police or regulatory powers." Appellant here had ample means and opportunity to enforce its generally applicable health and safety regulations by moving to revoke appellee's license, but instead chose to pursue a contractual remedy. Because we cannot conceive of any situation in which an action for contractual relief would be the only avenue available for the enforcement of generally applicable regulatory laws, we choose to follow the congressional directive to give section 362(b)(4) a "narrow construction," 124 Cong.Rec. H11089 (statement of Rep. Edwards), reprinted in 1978 U.S.Code Cong. & Admin.News 6436, 6444, and hold that an action by a governmental unit to enforce contractual rights is not exempt from the provisions of the automatic stay by virtue of section 362(b)(4). Accordingly, the actions taken by the Commonwealth court to terminate the contract between the Department and Corporacion violated the automatic stay.
 
 
 31
 C. Adequate Assurances.
 
 
 32
 Section 365 of the Bankruptcy Code permits a debtor, subject to the approval of the bankruptcy court, to assume or reject executory contracts and unexpired leases. The debtor may assume a contract that was executory as of the date of filing "at any time before the confirmation of a [reorganization] plan," unless the court, following a request by another contracting party, has designated a specific date by which the debtor must act to assume the contract. 11 U.S.C. Sec. 365(d)(2). There is no question that Corporacion filed a timely motion to assume its contract with the Department. The only section 365 issue on appeal[10] exists because of the Commonwealth court's holding that debtor had defaulted on the contract. Before a debtor can assume an executory contract that is in default it must first comply with the cure, compensation and future performance requirements of section 365(b)(1).[11] The debtor must at least provide the bankruptcy court with "adequate assurances" that each of these requirements will be satisfied. On appeal, however, we must accept the bankruptcy court's findings of fact and conclusions as to mixed questions of fact and law unless they are clearly erroneous. See Briden v. Foley, 776 F.2d 379, 382 (1st Cir.1985).
 
 
 33
 The bankruptcy court, accepting the Commonwealth court's findings regarding default, conducted a hearing to determine whether appellee had satisfied the "adequate assurance" standard outlined in section 365(b)(1). The court heard the testimony of Dr. Carlos Lopategui, Corporacion's principal shareholder and chairman of its board of directors since February 7, 1985. It also considered the specific plan contained in appellee's motion to assume the contract concerning how each default had been or would be cured. Finally, the court benefitted from its own personal inspection of the hospital and the federal inspection conducted by the Department of Health and Human Services just ten days prior to the Department's takeover of the hospital. The Department did not contest any of this evidence, offering only the testimony of an expert witness who admitted having no actual knowledge of the hospital's operations. The bankruptcy court determined that Dr. Lopategui's testimony was "credible and believable," that appellee's evidence of cure was "uncontradicted," and that appellee's proposals to cure the non-economic defaults identified by the Commonwealth court were "reasonable." Based on our reading of the record, we cannot conclude that the bankruptcy court's findings are clearly erroneous. We therefore affirm its determination that appellee offered evidence or "adequate assurance" of cure sufficient to justify assumption of the contract. 11 U.S.C. Sec. 365(b)(1)(A).
 
 
 34
 There being no claims for compensation due to the defaults enumerated by the Commonwealth court, the only remaining issue is whether appellee offered adequate assurance of future performance pursuant to section 365(b)(1)(C). At the hearing before the bankruptcy court, Corporacion did not offer any separate evidence on this point, leading counsel for appellant to move for a nonsuit. Appellee responded by insisting that such adequate assurance could be inferred from its past experience operating the hospital. Dr. Lopategui testified that most of the defaults identified by the Commonwealth court had been cured within the first two months after Corporacion filed its bankruptcy petition and that, until the Department's takeover of the hospital on November 1, 1985, Corporacion had been performing the contract satisfactorily. It was during this period, moreover, when the Department of Health and Human Services inspectors determined that Corporacion was operating the hospital in compliance with all Medicare conditions of participation. The bankruptcy court, being most familiar with Corporacion's operations and financial condition, found that "as to adequate future performance the debtor has already performed or put into motion the process." The Department's scant evidence fails to suggest that appellee's demonstrated ability to perform its obligations is illusory. Furthermore, the Department, which has recently issued appellee a new license to operate the hospital until 1988,[12] appears satisfied that Corporacion can operate the hospital in full compliance with its legal obligations.[13] Accordingly, we uphold the bankruptcy court's determination that appellee has offered "adequate assurance" of future performance to justify assumption of the contract. 11 U.S.C. Sec. 365(b)(1)(C).
 
 
 35
 III. Injunction of License Revocation Proceeding.
 
 
 36
 Appellant contends that the district court erroneously affirmed the bankruptcy court's order of August 2, 1985, enjoining the administrative proceeding to revoke or suspend Corporacion's license to operate the hospital. The bankruptcy court, however, expressly limited its injunction by stating that the proceeding would be stayed "only for such time as the Superior Court requires to hear and determine the case now before it." The injunction therefore expired of its own terms on November 1, 1985, when the Commonwealth court issued its decision in the contract action. The license that the Department sought to revoke, moreover, expired on June 30, 1986, and the Department, following an inspection of the hospital, has issued Corporacion a new two-year license. Based on these facts, the issue of whether the bankruptcy court properly enjoined the administrative proceeding is moot.[14] Furthermore, we do not believe that the case is "capable of repetition yet evading review." Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973).[15]
 
 
 37
 IV. Conclusion.
 
 
 38
 We affirm the order of the bankruptcy court permitting appellee to assume its contract with the Department of Health to operate the Fajardo Subregional Hospital. In reaching this decision we hold that the Department's contract termination action before the Commonwealth Superior Court was not exempt from the automatic stay under section 362(b)(4), that the Commonwealth court violated the stay by purporting to terminate the contract, and that appellee has satisfied all the requirements of section 365(b)(1) regarding the assumption of a contract in default.
 
 
 39
 We also find that the issue of whether the bankruptcy court properly stayed the Department's license revocation proceeding is now moot.
 
 
 40
 Affirmed.
 
 
 
 [1]
 Although the lower court order in Cash Currency supports review of the bankruptcy court's jurisdiction to abstain, the Seventh Circuit opinion in that case did not endorse such an exception to the general rule of nonreviewability set forth in 28 U.S.C. Sec. 1334(c)(2). In re Cash Currency Exchange, Inc., 762 F.2d 542, 555 (7th Cir.1985) ("Even if this court were to sanction the judicial creation of exceptions to this rule, which we do not, the one created by the district court must fail.")
 
 
 [2]
 If there was ever any question as to the scope of the bankruptcy court's abstention order, it was settled in that court's subsequent order of January 24, 1986. The court stated that its abstention order did not provide the Commonwealth court "with authority to execute or carry out the judicial process of collecting or enforcing the determination against property of the estate; such property upon the commencement of the case fell under this court's jurisdiction, which jurisdiction was not waived by this court, and probably could not be." Order of January 24, 1986, at 11-12 (footnotes omitted)
 
 
 [3]
 The relevant provisions of the Bankruptcy Code buttress our finding that the Commonwealth court could not obtain subject matter jurisdiction to enforce its judgment terminating the contract. Upon the filing of a petition under chapter 11, all property of the debtor, including intangible property such as contracts and licenses, falls within the exclusive jurisdiction of the bankruptcy court. 11 U.S.C. Sec. 541(a). Furthermore, section 362(a)(3) automatically stays "any act to obtain possession of property of the estate," and section 365 grants the bankruptcy court exclusive jurisdiction to determine whether contracts in default may be assumed or rejected. 11 U.S.C. Secs. 362(a)(3), 365. These provisions clearly preempt any contradictory state law because "a corporation may not be precluded by state law from availing itself of federal bankruptcy law." In re Cash Currency Exchange, 762 F.2d at 552
 
 
 [4]
 The legislative history of section 362, supported by subsequent judicial interpretation, distinguishes two types of police or regulatory actions: (1) actions in which the government seeks to protect public health, safety, and welfare, and (2) actions in which the government seeks to protect a pecuniary interest. See 124 Cong.Rec. H11089 (statement of Rep. Edwards), reprinted in 1978 U.S.Code Cong. & Admin.News 6436, 6444-45; State of Missouri v. United States Bankruptcy Court, 647 F.2d 768, 776 (8th Cir.1981), cert. denied, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982). Only the former are exempt from the automatic stay pursuant to section 362(b)(4). Based on this distinction, appellant argues that its contract action was not an attempt to protect a pecuniary interest and that, therefore, its actions must have been directed at protecting public health and safety. We acknowledge that the distinction drawn by Congress and the courts narrows the scope of the "police power" exception by excluding from its coverage legitimate police or regulatory actions brought for pecuniary purposes. We do not accept appellant's position, however, because its contract termination action does not even fall within the category of "police or regulatory" actions envisioned by the drafters of section 362(b)(4). Consequently, we do not reach the question of whether the Department's actions were directed at protecting public health or protecting a pecuniary interest
 
 
 [5]
 In fact, all of the cases cited by appellant to support its interpretation of section 362(b)(4) involve proceedings to enforce specific provisions of general regulatory schemes. See, e.g., Cournoyer v. Town of Lincoln, 790 F.2d 971 (1st Cir.1986) (zoning ordinance); Penn Terra, Ltd. v. Department of Environmental Resources, 733 F.2d 267 (3d Cir.1984) (environmental regulations); SEC v. First Financial Group of Texas, 645 F.2d 429 (5th Cir.1981) (securities laws); NLRB v. Evans Plumbing Co., 639 F.2d 291 (5th Cir.1981) (per curiam) (labor laws). One of the cited cases, moreover, directly contradicts appellant's position. State of Missouri v. United States Bankruptcy Court, 647 F.2d at 776 ("[W]e believe that the term 'police or regulatory power' refers to the enforcement of state laws affecting health, welfare, morals, and safety, but not regulatory laws that directly conflict with the control of the res or property by the bankruptcy court.")
 
 
 [6]
 Appellant filed its contract action on April 30, 1985, but did not initiate an administrative proceeding to revoke or suspend appellee's license until June 5, 1985
 
 
 [7]
 Appellant further argues that the decision we reach today will have the effect of insulating debtors who contract with the government to provide essential services from the government's legitimate regulatory and police power. This is simply false. At all relevant times the Department was free to initiate administrative proceedings to revoke or suspend appellee's license to operate the hospital. This is the same process that the Department must employ to regulate the operation of all hospitals in Puerto Rico, regardless of whether a government contract is involved in their operation. We have reason to believe, moreover, that such proceedings would constitute a legitimate exercise of the Department's police or regulatory power and would be exempt from the automatic stay under section 362(b)(4), (5), provided the Department was not seeking merely to protect a pecuniary interest. Our interpretation of the Bankruptcy Code today in no way jeopardizes the government's ability to protect the health and safety of its citizens by invoking the legitimate regulatory powers delegated to it by the people of Puerto Rico
 
 
 [8]
 Following his visit to the hospital, the bankruptcy judge noted that "the impression we had of the facility of debtor after seeing same flatly contradicts the impression we obtained previously from the evidence and representation of the Department."
 
 
 [9]
 The Department of Health and Human Services reported on December 6, 1985, that "as a result of a Federal survey of the above referenced hospital conducted on October 21 and 22, 1985 the hospital was found in compliance with all Medicare conditions of participation and will continue to be 'deemed' to meet applicable Medicare requirements based upon accreditation by the Joint Commission on Accreditation of Hospitals."
 
 
 [10]
 Appellant did not raise the issue of whether section 365 is available to debtors seeking to assume contracts for the provision of governmental services. Nevertheless, we feel compelled to address this novel issue because it has yet to be treated by the reported cases. We find nothing in the Code or subsequent case law to persuade us that debtors with government contracts should be denied the opportunity to assume those contracts. Nor do we believe that government agencies, after choosing to contract with private corporations, should receive more favorable treatment than other similarly situated parties. The "police power" exception to the automatic stay, section 362(b)(4), (5), sufficiently protects the regulatory power of government agencies. Given these protections, we see no reason why section 365 should not apply with full force to permit the assumption or rejection of government contracts by debtors. Section 365 "provides a means whereby a debtor can force others to do business with it when the bankruptcy filing might otherwise make them reluctant to do so." Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1310 (5th Cir.1985). So long as the governmental unit is free to exercise its police or regulatory powers by other means, it should be treated in the same manner as other "reluctant" parties doing business with the debtor. Accordingly, we find that contracts for the provision of governmental services, including the contract to operate the Fajardo Subregional Hospital at issue here, may be assumed by debtors according to the terms of section 365
 
 
 [11]
 That subsection provides:
 (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee--
 (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
 (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
 (C) provides adequate assurance of future performance under such contract or lease.
 11 U.S.C. Sec. 365(b)(1).
 
 
 [12]
 We do not find credible appellant's assertion, supported only by the Secretary's affidavit, that the new license was issued under duress. Although the Secretary possesses the statutory power to issue only a provisional one-year license when an applicant fails to meet one or more of the Department's health and safety regulations, see P.R. Laws Ann. tit. 24, Sec. 333f, here he chose to authorize completely appellee's operation of the Fajardo Hospital for a full two-year term
 
 
 [13]
 The Department is not without remedy if Corporacion should fail to satisfy its contractual obligations at some point in the future. As the district court order stated:
 The contract between the parties shall be respected as fully as possible within the bankruptcy context. The bankruptcy court will have jurisdiction to entertain any future petition by any interested party, including the Department, as it relates to the contract in the event that the status of the debtor so warrants.
 Order of April 15, 1986, at 32 (citations omitted).
 
 
 [14]
 In its order the district court enjoined the Department "from further prosecuting this matter in any other forum not having bankruptcy jurisdiction." Our reading of that portion of the order, and our understanding of 28 U.S.C. Sec. 157(b)(2), lead us to conclude, contrary to appellant's assertion, that the court's injunction applies only to the contract termination action. The automatic stay does not bar an action to enforce an agency's police or regulatory power unless the action has been initiated to protect a pecuniary interest. The court's order, therefore, if interpreted to enjoin future efforts by the Department to initiate license revocation proceedings, would likely be overbroad. We reaffirm, however, that a bankruptcy court does possess the power, in exceptional circumstances, to enjoin even administrative proceedings that are exempt from the automatic stay pursuant to section 362(b)(4), (5). 11 U.S.C. Sec. 105 ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); House Report, supra, at 342, reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6298; Senate Report, supra, at 51, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5837 ("The court has ample other powers to stay actions not covered by the automatic stay. Section 105 ... grants the power to issue orders necessary or appropriate to carry out the provisions of title 11."); State of Missouri v. United States Bankruptcy Court, 647 F.2d at 776 (citing section 105 for the proposition that "[t]he bankruptcy court could take appropriate steps to protect its jurisdiction over the estate, regardless of whether a proceeding falls within the section 362(b)(4) exception.")
 
 
 [15]
 In issuing its order temporarily enjoining the license revocation proceeding, the bankruptcy court admitted to being influenced by the contract termination suit pending before the Commonwealth court. Because the proceedings before the Commonwealth court have now ended, we do not believe that the precise actions presently challenged by appellant are likely to recur