**In re FERKAUF, INCORPORATED, a/k/a Ferkauf, Roggen Inc. and Ferkauf, Roggen, Bressman & Clasen, Inc., Bankrupt.**

**No. 84 Civ. 8331.**
**Bankruptcy No. 74 B. 1200.**

United States District Court, S.D. New York.

Dec. 30, 1985.

Alex Rosen, Paul Krohn, and David Helfant, New York City, for trustee.

## OPINION

GRIESA, District Judge.

This is an appeal from a decision of bankruptcy Judge Howard C. Buschman, III, dated September 6, 1984, reported at 42 B.R. 852. Judge Buschman fixed the compensation for the trustee, Allan Feingertz, and the attorneys for the trustee, Alex Rosen, Paul Krohn and David Helfant. An application for reconsideration was made and was denied on October 16, 1984.

This appeal is brought by Feingertz, Krohn and Helfant. The decision of the bankruptcy judge is affirmed. The decision is thorough and comprehensive both as to the factual considerations and the discussion of legal authorities. This affirmance relies basically on the bankruptcy judge's opinion.

The bankruptcy proceeding relates to an investment firm, Ferkauf, Incorporated. The proceeding started in 1974. It was not until the spring of 1984 that any distribution was made, at which time there was an interim payment to creditors. The fee applications in question were made in 1984, preparatory to closing out the estate.

Alex Rosen was attorney for the trustee from 1974 to 1976. Thereafter, Paul

Krohn was the attorney for the trustee, and David Helfant assisted Krohn.

Rosen applied to the bankruptcy judge for a fee of $38,500, and was awarded $10,200. Rosen has not appealed. Krohn and Helfant applied for a fee of $180,000. They were awarded $84,000. On this appeal, Krohn and Helfant have reduced their request to $144,000, but they appeal from the reduction to the lower $84,000 figure. The trustee Feingertz applied for compensation of $4,000, and was awarded $2,400. The trustee appeals.

■ The standard of review on an appeal of a fee award from a bankruptcy court to the district court is that the decision of the bankruptcy judge will be affirmed unless the bankruptcy judge has abused his discretion—i.e., failed to apply proper procedures or legal standards, or made factual findings that were clearly erroneous. *Matter of Futuronics Corp.*, 655 F.2d 463, 471 (2d Cir.1981); *Matter of First Colonial Corp. of America,* 544 F.2d 1291, 1298 (5th Cir.), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977); Bankruptcy Rule 8013.

■ In the present case, the bankruptcy judge found that the services of Krohn and Helfant were characterized by delay and nonproductivity, and that they failed to adequately fulfill their duty to expedite the liquidation of the debtor's assets and the disbursement of the proceeds to the creditors.

The bankruptcy judge described in detail the accomplishments of Krohn and Helfant as well as their deficiencies. His findings were balanced and reasonable.

The bankruptcy judge found that the legal efforts of Krohn and Helfant added roughly $70,000 to the value of the estate. This figure was the total amount of money which the estate derived from an arbitration against another investment firm (Kern), a lawsuit involving an issue of securities in which Ferkauf had participated, and ten preference actions. The arbitration award was $26,400. The lawsuit about the stock issue was settled for $40,000.

The ten preference actions brought a total of $1,660. The bankruptcy judge pointed out that the two major litigations were completed by the year 1979. As to the ten preference actions, the judge noted that about three times as much in fees was requested as the money recovered in the actions. Also, after 1979 very little occurred in these actions except adjournments.

The bankruptcy judge considered that the results of these various proceedings plus the other results of the Krohn/Helfant legal efforts were of a modest nature. For instance, the Kern arbitration originally involved mutual claims between Ferkauf and Kern for fairly substantial sums of money. Ferkauf did succeed in defeating the claims of Kern and Ferkauf was awarded $26,400. At the same time, however, Ferkauf lost on its claims for a substantially larger amount than the $26,400. Thus the arbitration was largely awash.

A certain amount of work by Krohn and Helfant occurred in relation to the sale of securities held by Ferkauf. However, this work was to some extent ministerial. The sales were themselves mainly business transactions, requiring little skilled legal services.

Ferkauf owned stock in a company called Napco. No steps were taken to liquidate these securities until December 1980. Krohn and Helfant assisted in defending the estate against claims made by two individuals for a portion of this stock. There was a settlement favorable to Ferkauf. However, the bankruptcy judge felt that this transaction did not represent much of an accomplishment on the part of Krohn and Helfant, because of the delay of several years in attempting to liquidate the asset, and the fact that there was no indication that the claims against Ferkauf regarding the stock were especially strong. The finding of delay in regard to the handling of this asset is not clearly erroneous, although fortuitously the stock appreciated in value during the delay. As to the strength of the claims against Ferkauf regarding this stock, Krohn and Helfant have

presented evidence indicating the matter was more serious than was thought by the bankruptcy judge.

However, as to the overall findings of a lack of productivity and delay in liquidating the estate, these findings are justified, when the matter is looked at in the context of the modest results which were achieved by the legal services in a very lengthy proceeding.

One reason why these findings of the bankruptcy judge should not be set aside, is that his actual "remedy" for the nonproductivity and the delay was only a relatively modest cut in the fee application. He discounted the application by only 20% because of delay, by 5% because of the ministerial nature of certain of the services, and by 5% because of duplication of effort. There is no reason to hold that these discounts were clearly erroneous or were an abuse of discretion.

A major component of the bankruptcy judge's reduction from the $180,000 claimed related to the hourly fee. Both Krohn and Helfant requested a flat hourly rate for all services over the entire eight-year period of $150 per hour. The bankruptcy judge made a careful evaluation of the information about hourly rates in connection with counsel in bankruptcy proceedings and fee awards during the period of time involved. The judge ruled that an average of $100 per hour was proper. On appeal, Krohn and Helfant object to this, but in fact they have gone a long way in conceding the bankruptcy judge's point. As already described, they have reduced their claim to $144,000. The basis of this is that they are seeking the $150 per hour figure only for the period beginning in 1981. For the years before that, Krohn seeks $100 per hour and Helfant seeks $125 per hour. Under all of the circumstances, it is held that the bankruptcy judge's adjustment of the hourly rate to $100 should be sustained.

In conclusion, Krohn and Helfant have not shown that the bankruptcy judge's fee award was an abuse of discretion or that his findings of fact were clearly erroneous.

The fee award to Krohn and Helfant is affirmed.

As to the appeal of the trustee, it is based solely upon the arguments of Krohn and Helfant regarding the bankruptcy judge's findings about nonproductivity and delay. For the reasons already indicated, these arguments are without merit. The fee award to the trustee is affirmed.

So ordered.