In re CHATEAUGAY CORPORATION, Reomar, Inc., The LTV Corporation, et al., Debtors.

The LTV CORPORATION, et al., Appellees,

v.

David H. MILLER, et al., Appellants.

88 Civ. 0366 (RWS).

United States District Court, S.D. New York.

Jan. 16, 1990.

Davis Polk & Wardwell, Levin & Weintraub & Crames, New York City, for The LTV Corp.

R.A. King, Kenneth R. Bruce, Buchanan Ingersoll, P.C., Pittsburgh, Pa. (Stuart Cotton, Mount Cotton & Wollan, New York City, of counsel), for David H. Miller and William W. Schaffer.

## OPINION

SWEET, District Judge.

Appellants, David H. Miller ("Miller") and William W. Shaffer ("Shaffer") (collectively "Miller & Shaffer"), appeal from two orders. The first order involves the District Court for the Southern District of New York's refusal to withdraw the reference under the mandatory withdrawal provision of 28 U.S.C. § 157(d).[1] The second order is one for an issuance of injunction and a denial of a motion to dismiss from the Bankruptcy Court for the Southern District. For the reasons set forth below, the appeal on both orders is denied.

*Parties*

Miller and Shaffer are former salaried employees of Jones & Laughlin Steel Incorporated ("J & L") and participants in the J & L Plan.

Appellee, LTV Corporation ("LTV"), is a Delaware corporation with offices in New York, New York, and appellee, LTV Steel Company, Inc. ("LTV Steel") is a New Jersey corporation and wholly-owned subsidiary of LTV. LTV and LTV Steel collectively are referred to as the "debtors".

The Plans are single-employer plans as defined in Section 4001(a)(15) of ERISA, 29 U.S.C.A. § 1301(a)(15), and LTV administered these plans.

Pension Benefit Guaranty Corporation ("PBGC") is a wholly-owned United States government corporation established by Section 4002 of ERISA, 29 U.S.C.A. § 1302 to administer the pension plan termination insurance program under Title IV of ERISA.

*Prior Proceedings*

LTV Bankruptcy and Related Proceedings

On July 17, 1986, LTV and most of its subsidiaries filed Chapter 11 petitions in the Bankruptcy Court of the Southern District of New York. LTV, directly and through various subsidiaries, was the administrator of approximately thirty defined benefit pension plans funded by annual contributions from LTV, including four major plans of its steel subsidiary, LTV Steel. Approximately 140,000 retirees and active employees are participants in or beneficiaries of these plans. LTV's inability to fund the pension plans was one of the primary reasons for the filing of the bankruptcy petitions.

In 1985 LTV obtained a waiver of payment of approximately $175 million of minimum funding requirements for three of the pension plans for the plan year 1984. In 1986, after its filings, LTV applied for another waiver of approximately $215 million of contributions for twelve of the pension plans for the plan year 1985. On November 12, 1986 LTV was notified that the 1985 waiver had been denied and that the 1984 waiver was deemed void. The immediate result was that the $390 million of unpaid contributions became due and payable as of the original due dates.

On September 30, 1986, PBGC obtained a consent order in the district court terminating one of the pension plans effective September 30, 1986. On January 12, 1987 three other pension plans, including the J & L Plan, were terminated by the PBGC as of January 13, 1987 pursuant to consent orders entered in the district court. At that time PBGC became trustee of the terminated plans, became liable for guaranteed payments to beneficiaries, and accrued claims against LTV for termination liabilities. The present value of LTV's unfunded termination liability with respect to these pension plans has been estimated to exceed $2.2 billion.

On September 22, 1987 PBGC allegedly restored the three plans terminated on January 13, 1987, including the J & L Plan, to their pre-termination status, retroactive to

---

1. The District Court order appealed from was interlocutory when issued but has since merged into the Judgment and Order of the Bankruptcy Court, which is a final order presently appealable under Section 158 of Title 28. 28 U.S.C. § 158(a). *In re Chateaugay Corp.*, 826 F.2d 1177, 1179 (2d Cir.1987).

January 13, 1987. LTV disputes the validity of the restoration and believes that the PBGC's action is void. Consequently, at the time of the following events, the status of the three terminated pension plans was in litigation.

On September 23, 1987, LTV moved in the Bankruptcy Court for an order enforcing the automatic stay against the PBGC with respect to the restoration, seeking a declaration that the PBGC's action was null and void of legal effect (the "Stay Application"). On September 24, 1987 the PBGC filed a petition in this court seeking to withdraw the reference from the Bankruptcy Court of the Stay Application (the "Withdrawal Petition"). This Court granted the Withdrawal Petition on November 24, 1987.

On October 9, 1987 the PBGC commenced another action, *Pension Benefit Guaranty Corp. v. LTV Corp.*, Civ. No. 87–7261, by complaint filed in this Court (the "PBGC Action"). In the PBGC Action, the PBGC sought a declaration that the restoration is effective and seeks injunctive relief compelling LTV to comply with the PBGC's administrative restoration. Oral argument was heard on March 4 in the PBGC Action. On June 22, 1988 this court held that the PBGC restoration order was not valid. *In re Chateaugay Corp.*, 87 B.R. 779 (S.D.N.Y.1988). The Second Circuit affirmed that decision on May 12, 1989. *Pension Benefit Guaranty Corp. v. The LTV Corp.*, 875 F.2d 1008 (2d Cir.1989), *cert. granted,* — U.S. —, 110 S.Ct. 321, 107 L.Ed.2d 311 (1989).

Pending resolution of the status of the pension plans, participants in those plans were entitled to payments from the plan of benefits equivalent to benefits guaranteed upon termination of a pension plan. LTV obtained an order under Chapter 11 of the Bankruptcy Code and under the auspices of the Bankruptcy Court, but not under ERISA, appointing LTV administrator *ad litem* of the terminated plans so that such payments could be made.

Proceedings Relating to Miller and Shaffer

Miller and Shaffer, former salaried employees of LTV Steel's predecessor and of the Aliquippa & Southern Railroad Company, filed their first lawsuit ("Pittsburgh Lawsuit 1") in the United States District Court for the Western District of Pennsylvania to seek declaratory and injunctive relief preventing voluntary termination of the J & L Plan. The Bankruptcy Court enjoined this lawsuit on the ground that it would interfere with reorganization and the reorganization court's jurisdiction. The injunction was vacated on appeal. The District Court found that the Pittsburgh Lawsuit 1 was moot because the J & L Plan had already been terminated.

On October 21, 1987 Miller and Shaffer filed an amended complaint in the Western District of Pennsylvania (Pittsburgh Lawsuit 2") seeking class action status on behalf of over 10,000 individuals and adding as defendants four wholly-owned railroad subsidiaries of LTV Steel (the "Railroads"). None of these new defendants is a debtor, and each was alleged to be a contributing sponsor of the J & L Plan. Miller and Shaffer, operating on the assumption that the J & L Plan had been fully restored, sought to compel contributions to the J & L Plan ("Count II"), and to compel payment of full benefits from the J & L Plan to participants ("Count III"). Miller and Shaffer also sought injunctive relief to prevent the J & L Plan from terminating under the distress termination provisions in 29 U.S.C. § 1341 ("Count I"). Pittsburgh Lawsuit 2 is only against non-debtors.

LTV and the Railroads commenced an adversary proceeding to enjoin prosecution of Pittsburgh Lawsuit 2 on the basis that the second action threatened the Bankruptcy Court's exclusive jurisdiction over LTV's bankruptcy cases and LTV's reorganization effort. On November 2, 1987, three days before the hearing scheduled on LTV's application for a preliminary injunction (the "LTV Application"), Miller and Shaffer filed a motion to withdraw the adversary proceeding. After argument on November 5, 1987 the Honorable Leonard B. Sand denied the withdrawal petition, finding that mandatory withdrawal under § 157(d) was unwarranted as only bankruptcy issues were to be resolved in the adversary pro-

ceeding and declining to withdraw as a matter of discretion.

Also on November 5, 1987, Miller and Shaffer in the Bankruptcy Court filed a motion to dismiss the adversary proceeding on the ground that the bankruptcy court lacked jurisdiction to enjoin a third party action against non-debtor subsidiaries. Miller and Shaffer contended that none of the assets of either the J & L Plan or the Railroads were alleged to be the assets of the debtors and thus that the complaint failed to allege a situation that would be impaired by the continuation of Pittsburgh Lawsuit 2. The Bankruptcy Court denied the motion and after a hearing on the same day granted the relief requested by LTV and enjoined prosecution of Pittsburgh Lawsuit 2.

The evidence at the Bankruptcy Court hearing was limited to exhibits and the testimony of one witness, Mr. J. Peter Kelly, ("Kelly") Executive Vice–President and former General Counsel of LTV Steel. The documents entered as exhibits are for the most part orders or pleadings in proceedings associated with the earlier adversary proceeding involving Miller and Shaffer as well as proceedings in which Miller and Shaffer did not participate.

Kelly testified that the injunctive relief against termination of the J & L Plan requested by Miller and Shaffer in Count I of the Amended Complaint would "prevent us from being able to explore alternative ways, I believe, that exist for causing the termination of the plans, which is critical to the company's reorganization effort." On direct examination Kelly was permitted to testify to his understanding of the effect of Count I, the requested injunctive relief, but the Bankruptcy court prohibited any cross-examination as to the Kelly's knowledge of the provisions of 29 U.S.C. § 1341 which outlines the distress termination procedures and the limits of the authority of the bankruptcy court.

As to Count II, the requested payment of benefits and their impact on the debtor, Kelly testified that, while the assets of the J & L Plan were not those of the debtor, from a business perspective "the greater presence or absence of those assets has a direct impact on the companies' obligation to put money into the plan." The complaint did not allege and Kelly did not testify to any facts to establish that the non-debtor Railroads are alter egos of any Debtor entity. On cross-examination Kelly stated that each of the four non-debtor railroads has its own assets, creditors, obligations, bank accounts, separate payrolls, and employees.

In response to Count III, the payment of full benefits to participants, Kelly testified that the benefit payments "would pose a very substantial problem for all of the companies," and that the payment of promised benefits sought by Pittsburgh Lawsuit II would be made out of the assets of the pension trust, not debtor assets.

Kelly also testified about the impact of the continuation of Pittsburgh Lawsuit 2. Kelly stated that continuation of the second lawsuit "while the PBGC's litigation is pending in another court, present[s] the added problem of inconsistent results emerging from different courts which will give us a substantial problem in the day-to-day management of the company." Elaborating on the problem posed for LTV personnel by the continued prosecution of the suit, Kelly stated:

The continued prosecution of this case would pose a very substantial burden on not only those attorneys but the people who are involved in day-to-day benefit administration. From my experience whenever you look at a case which starts out purporting to be a class action, I anticipate a substantial amount of discovery before it is over, and the problem is what this would do in terms of our ability to use the same people for other activities. They are the same individuals who are deeply involved in our dispute with the PBGC and they are the same people who are and will be deeply involved in our exploration as to whether or not we can find a basis for resolution of the entire fundamental underlying problem we have with the PBGC.

Finally, the Official Committee of Unsecured Creditors, the Equity Committee, and

the PBGC appeared at the hearing to support LTV's Application against Pittsburgh Lawsuit 2.

The Bankruptcy Court granted LTV's Application on the basis that the prosecution of Pittsburgh Lawsuit 2 posed a significant threat to the court's jurisdiction and administration of LTV's reorganization and of irreparable injury to the debtor. The court stated:

> Based on the evidence and testimony on the record, which the Court finds credible and persuasive and which the Court finds sustains LTV's burden, LTV has amply demonstrated that without the relief sought, LTV's reorganization, and this Court's jurisdiction over the reorganization, may be irreparably harmed by prosecution of [Pittsburgh Lawsuit 2]. An injunction is necessary to protect the ability of the Debtors and the parties in interest to the reorganization to seek to successfully reorganized, so the power of the Bankruptcy Court are appropriately exercised in the issuance of that injunction.

> Based on the evidence and the testimony on the record, LTV has made a sufficient showing that the likelihood of reorganization will be hampered if [Pittsburgh Lawsuit 2] is allowed to proceed at this time.

> [Pittsburgh Lawsuit 2] presents a significant threat to this and the Southern District Court's jurisdiction and ability to administer LTV's bankruptcy case and to the determination of the related issues pending in this court and in the Southern District. The Court in which [Pittsburgh Lawsuit 2] is presently pending potentially could effectively remove from this Court the power to authorize voluntary termination of the J & L Plan if that court determines that the plan is properly restored. Accordingly, to permit [Pittsburgh Lawsuit 2] to proceed would effectively nullify this Court's power to address one of the motivating reasons behind LTV's resort to Chapter 11.

The Bankruptcy Court concluded that success by Miller and Shaffer in Pittsburgh Lawsuit 2 would pose the risk of collateral estoppel or inconsistent decisions regarding the validity of the restoration of the J & L Plan, a central issue then pending in litigation between LTV and PBGC before the District Court for the Southern District of New York. Additionally, the court concluded that Miller and Shaffer would not be prejudiced by an injunction because Pittsburgh Lawsuit 2 would be mooted by a ruling on the validity of the PBGC's restoration, and no evidence established that participants in the J & L Plan were not receiving substantially all payments under the Bankruptcy Court's order.

After the Bankruptcy Court's decision to enjoin Miller and Shaffer's prosecution of Pittsburgh Lawsuit 2, Miller and Shaffer sought to intervene in the PBGC's action in this court to enforce the PBGC's disputed restoration of the pension plans. In a memorandum opinion dated February 1, 1988, this court granted Miller and Shaffer's motion to intervene individually and as representatives of participants in the J & L Plan. From the time of this court's decision in the PBGC Action until October 1989 all parties apparently treated this appeal as dormant. The court, *sua sponte*, sought to determine the status of the appeal, and thus the appeal was argued on October 13, 1989 and considered fully submitted as of that date.

*Discussion*

*1. Mootness*

■ The jurisdiction of the federal courts is limited by the Constitutional requirement that only actual cases and controversies be heard. U.S.C.A. Const. Art. 3, § 2. Where the requested relief already has been received and nothing further can be gained from an appellate decision, the court is without jurisdiction to hear the appeal. *See International Brotherhood of Boilermakers v. Kelly*, 815 F.2d 912, 914–16 (3rd Cir.1987).

LTV contends that this court's granting of intervention to Miller and Shaffer in the PBGC Action and the subsequent ruling in that action moots the present appeal of the two orders on the basis that no live controversy exists with respect to Miller and Shaffer's necessity to litigate their claims

in a federal district court. LTV claims that this court's ruling denying the validity of the PBGC's purported restoration of the plan moots Pittsburgh Lawsuit 2 insofar as that lawsuit is premised on the validity of the PBGC restoration.

The granting of the right to intervene in the PBGC Action and the subsequent ruling in that Action did not make this appeal moot because the relief granted to Miller and Shaffer did not diminish Miller and Shaffer's stake in the outcome of the issues raised in Pittsburgh Lawsuit 2, nor does the ruling in the PBGC Action relieve Miller and Shaffer of the prohibition against proceeding with Pittsburgh Lawsuit 2. At oral argument on this appeal Miller and Shaffer alleged that a live controversy exists even with terminated status of the Plan. The validity of these allegations would be a determination for the court in Pittsburgh Lawsuit 2. This appeal from the Bankruptcy order is not moot in that as long as the injunction exists, Miller and Shaffer are not permitted to proceed with their litigation in Pittsburgh Lawsuit 2.

### 2. Standard of Appellate Review

In reviewing the issuance of an injunction by a lower court, an appellate court should examine whether in issuing the injunction, the lower court "abused its discretion." *Matter of Emergency Beacon Corp.*, 52 B.R. 979, 986 (S.D.N.Y.1985), *aff'd*, 790 F.2d 285 (2d Cir.1986); *In re Johns–Manville Corp.*, 60 B.R. 842, 847–49 (S.D.N.Y.), *rev'd on other grounds*, 801 F.2d 60 (2d Cir.1986). An abuse of discretion may take the form of the application of erroneous legal principles or procedures, findings of fact which are clearly erroneous, or error in the substance or form of the injunction. *See In re Ferkauf, Inc.*, 56 B.R. 774, 775 (S.D.N.Y.1985).

### A. Denial of the Mandatory Withdrawal of the Adversary Proceeding

The District Court denied the Miller and Shaffer motion to withdraw the refer-

ence, holding that withdrawal was not mandatory and that cause was not shown to render discretionary withdrawal appropriate.[2] Miller and Shaffer contend that the adversary proceeding was subject to mandatory withdrawal because the decision in the LTV application for an injunction to stay Pittsburgh Lawsuit 2 necessitated substantial and material consideration of ERISA issues.

Withdrawal of the reference is governed by 28 U.S.C. § 157(d), which provides in relevant part:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

Withdrawal of the reference is required in any case in which "substantial and material consideration" of federal statutes, in addition to the bankruptcy code, is necessary for resolution of the proceeding. *In re Combustion Equipment Assoc., Inc.*, 67 B.R. 709, 711 (S.D.N.Y.1986). Congress intended Section 157 to be read narrowly in order to comply with the overall policy that bankruptcy issues are heard in the Bankruptcy Court. *See* 130 Con.Rec. S6081 (daily ed. June 19, 1984) ("The district court should withdraw such proceedings only if the court determines that the assertion that other laws regulating organizations or activities affecting interstate commerce are in fact likely to be considered, and should not allow a party to use this provision to require withdrawal where such laws are not material to resolution of the proceeding").

Miller and Shaffer's claim that the District Court erred in its denial of mandatory

---

**2.** Miller and Shaffer have not appealed the district court's refusal as a discretionary matter to withdraw LTV's application.

withdrawal because LTV's Application for an injunction to stay prosecution of Pittsburgh Lawsuit 2 involves "substantial and material consideration" of ERISA issues. However, LTV's Application was premised on the Bankruptcy Code in that the injunction sought to prevent litigation that potentially could jeopardize the Bankruptcy Court's reorganization process. LTV's application did not involve consideration of the statutory basis of the cause of action asserted in the lawsuit sought to be stayed but rather only a finding that the lawsuit may interfere with the Bankruptcy Court's jurisdiction to administer the estate.

Although the Bankruptcy Court's assessment of LTV's application had to consider the issues and the potential outcomes presented by litigation in Pittsburgh Lawsuit 2, the Bankruptcy Court did not have to examine the merits of those issues and the statutory law implicated by the underlying merits, but only whether litigation in that lawsuit could affect the proceedings of the Bankruptcy Court. The record below demonstrates that the Court granted the LTV Application for an injunction of Pittsburgh Lawsuit 2 pursuant to the Bankruptcy Code on the ground that Pittsburgh Lawsuit 2 had the potential to affect the Court's proceedings.

Consequently, although the underlying cause of action in Pittsburgh Lawsuit 2 may necessitate substantial and material consideration of laws other than the Code, the District Court properly denied the Miller and Shaffer withdrawal motion because the LTV application concerned not the underlying merits of the Pittsburgh Lawsuit 2, but whether a ruling in that lawsuit could have adverse implications for the Bankruptcy Court. The record below supports LTV's contention that the LTV application was sought on the basis of Section 105, Section 362 of the Bankruptcy Code and Section 157 of Title 28 and that the Bankruptcy Court granted LTV's application on the basis of the Bankruptcy Code, namely, that the Pittsburgh Lawsuit 2 could affect the Court's reorganization process.

### B. Whether the Bankruptcy Court Erred in the Denial of the Miller and Shaffer Motion to Dismiss.

Miller and Shaffer contend that the Bankruptcy Court erred in denying the Miller and Shaffer motion to dismiss the adversary proceeding on the basis that the court lacked jurisdiction. Miller and Shaffer maintain that proper pleading to confer jurisdiction on a bankruptcy court to enjoin actions against non-debtor subsidiaries requires the complaint to contain allegations that the subsidiary is a mere dummy or alter ego of the debtor and that the LTV Adversary Complaint only alleged that the Railroads were wholly-owned subsidiaries of the debtors. In support of this proposition Miller and Shaffer cite *In re Beck Industries, Inc.*, 479 F.2d 410, 417 (2d Cir. 1973), *cert. denied*, 414 U.S. 858, 94 S.Ct. 163, 38 L.Ed.2d 108 (1973).

Once jurisdiction is established, a bankruptcy court may issue an injunction under 11 U.S.C. § 105(a) (1982) which permits the issuance of any order necessary or appropriate to carry out the provision of the Code, "including orders restraining actions pending elsewhere." *In re Johns–Manville Corp.*, 801 F.2d 60, 63 (2d 1986).

The Bankruptcy Court, in its order dated December 8, 1987, asserted jurisdiction on the basis of 28 U.S.C. § 157(b)(2)(A). Section 157 provides in pertinent part that:

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgements, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—(A) matters concerning the administration of the estate;

The Bankruptcy Court found, and Miller and Shaffer do not contest, that LTV's

Application for an injunction extending the automatic stay of Pittsburgh Lawsuit 2 was a matter " 'concerning the administration of the estate' " and constitutes a " 'core proceeding' " pursuant to 28 U.S.C. § 157(b)(2)(A). Accordingly, the Court did not abuse its discretion in asserting jurisdiction; the Court properly was vested with jurisdiction to issue an injunction pursuant to 11 U.S.C. 105(a) 1982, irrespective of the nature of the allegations set forth in the Complaint concerning the relationship between the debtor and the Railroads.

*C. Whether the Bankruptcy Court Erred in Granting LTV's Application for an Injunction against Pittsburgh Lawsuit 2.*

■ The power of the Bankruptcy Court to issue an injunction in order to preserve the integrity of the reorganization process is well established. That power is premised upon 28 U.S.C. §§ 1334 and 157 which provide for centralized jurisdiction and administration of the debtor, its estate and its reorganization in the Bankruptcy Court, and is effectuated by Sections 362 and 105 of the Code. The reach of bankruptcy jurisdiction encompasses all matters the outcome of which could affect the debtor or its reorganization. *See, e.g., In re Johns–Manville Corp.*, 801 F.2d 60, 64 (2d Cir. 1986); *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984).

■ The Bankruptcy Court may protect its jurisdiction by enjoining parties from taking actions which threaten that jurisdiction. *Continental Illinois National Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry. Co.*, 294 U.S. 648, 675–76, 55 S.Ct. 595, 605–06, 79 L.Ed. 1110 (1935). Section 105(a), the All Writs provision of the Code, is the current enactment of the statutory foundation for the Bankruptcy Court's equitable power and provides that the "court may issue any order process, or judgment that is necessary or appropriate to carry out the provisions of this title." Where an action taken outside the bankruptcy court threatens the reorganization, Section 105 permits the issuance of injunctive relief to effectuate the bankruptcy court's jurisdiction under 28 U.S.C.

§ 157 to administer the reorganization. *In re Johns–Manville Corp.*, 801 F.2d at 64.

On appeal, the issue presented is whether the Bankruptcy Court abused its discretion by issuing the injunction. The Bankruptcy Court gave several reasons for issuing an injunction to protect the court's jurisdiction over the reorganization proceedings. Included in those reasons, among others addressed below, were the need to prevent inconsistent decisions on matters critical to the reorganization proceedings and the need to protect the Bankruptcy Court's ability to execute those reorganization proceedings.

An examination of the record reveals sufficient support for the Bankruptcy Court's finding that the continued litigation of Pittsburgh Lawsuit 2 posed a threat to the Bankruptcy Court's jurisdiction. Specifically the Court stated:

Defense of or participation in the pending potential lawsuits will hamper the Debtors' ability to reorganize in that (i) it will divert the energies of LTV's legal and managerial talents away from the efforts to reorganize, at least initially; and (ii) the cost of defense and participation in these actions will necessarily deplete assets of the Debtors' estates; The Debtors' effort to reorganize will also be hindered if issues critical to the reorganization are decided piecemeal in a variety of courts with possibly contrary holding [sic].

Kelly's testimony at the hearing supports this finding such that on this appeal the Bankruptcy Court's decision cannot be considered to be an abuse of discretion. Moreover, case law supports the Court's use of Section 105 authority to protect the reorganization effort from precisely the concerns presented in this case. *See In re A.H. Robins Co., Inc.*, 828 F.2d 1023, 1026 (4th Cir.1987) (court has authority to stay suit where debtor would inevitably be burdened), *cert. denied*, 485 U.S. 969, 108 S.Ct. 1246, 99 L.Ed.2d 444 (1987).

Miller and Shaffer assert four bases upon which the issuance of the injunction can be found improper. First, Miller and

Shaffer contest the injunction because Pittsburgh Lawsuit 2 was not brought directly against a debtor or its assets and that the testimony presented at the injunction hearing was "wholly inadequate" to establish that Pittsburgh Lawsuit 2 was actually a suit against the Debtor or its assets. Second, Miller and Shaffer argue that the injunction improperly issued because Pittsburgh Lawsuit 2 would not remove from the Bankruptcy Court any authority to grant distress termination under 29 U.S.C. § 1341. Third, Miller and Shaffer argue that the Bankruptcy Court lacked authority to enjoin the Lawsuit to protect issues pending in another federal court and fourth, that contrary to the Court's finding, the issues presented in Pittsburgh Lawsuit 2 do not pose collateral estoppel concerns.

None of these four contentions requires reversal of the Bankruptcy Court's decision to grant the LTV Application.

■ The power of the Bankruptcy Court to enjoin the prosecution of suits which threaten the integrity of the reorganization process is not dependent on a showing that direct liability is sought to be imposed on the debtor. *See In re A.H. Robins Co., Inc.*, 828 F.2d at 1026; *In re Johns–Manville Corp.*, 801 F.2d at 67. On the contrary, such an order is in the nature of an in rem injunction, in which the res, the reorganization, is protected in order to preserve the integrity of the bankruptcy court's necessarily exclusive jurisdiction. *Cf. In re Baldwin–United Corp.*, 770 F.2d 328, 337 (2d Cir.1985) ("the need to enjoin conflicting state proceedings arises because the jurisdiction of a multidistrict court is 'analogous to that of a court in an in rem action or in a school desegregation case, where it is intolerable to have conflicting orders from different courts' ").

The interrelationship with respect to liability between the Debtor and the non-debtor Railroads is immaterial to whether the Bankruptcy Court can issue an injunction to protect its reorganization proceedings. The injunction at issue here was not premised upon any claim that the debtor would be harmed because of an interrelationship between the assets of the debtor and the property of the Railroads.[3]

Miller and Shaffer's remaining three arguments against the issuance of the injunction—that Pittsburgh Lawsuit 2 could not remove from the Bankruptcy Court a nonexistent authority to authorize distress termination of the J & L Plan, that the Bankruptcy Court could not protect the jurisdiction of another federal court, namely this court's ability to rule on the PBGC Action, and that no collateral estoppel problems exist—even if taken as true, do not merit the vacating of the injunction because the injunction no longer rests on these rationales. These issues have been mooted by the ruling in the PBGC Action. Nonetheless, because the injunction did not rest solely upon these rationales, whether or not the Bankruptcy Court erred in its treatment of these arguments is immaterial as long as the other independent grounds discussed above remain vital and continue to uphold the injunction.

*Conclusion*

For the reasons set forth above, the appeals of the two orders are denied.

It is so ordered.

---

3. Although the Bankruptcy Court noted that the Pittsburgh Lawsuit 2 would impose "substantial litigation involvement upon LTV," the harm referred to was not a depletion of assets resulting from the interrelationship between the debtor and non-debtor entities but rather the implications upon the debtors ability to reorganize so that "the powers of the Bankruptcy court are appropriately exercised." Bankruptcy Order, December 8, 1988, at 8–9.