**In re Michael L. DORN, dba Old World Gardener, Debtor.**

**Bankruptcy No. 2–92–02416.**

United States Bankruptcy Court,
S.D.  Ohio,
Eastern  Division.

June  10,  1994.

861

Pamela N. Maggied, Columbus, OH, for debtor.

Arnold S. White, Columbus, OH, Chapter 7 Trustee.

Alexander G. Barkan, Columbus, OH, Office of U.S. Trustee.

## MEMORANDUM OPINION AND ORDER

CHARLES M. CALDWELL, Bankruptcy Judge.

On March 31, 1994, the Court conducted a hearing on the Application of Arnold S. White for Allowance of Compensation as Counsel for Trustee and the Final Report and Account of Trustee. At the hearing, Arnold S. White ("Trustee") was present along with a representative of the Office of the United States Trustee ("U.S. Trustee"). No party in interest nor the U.S. Trustee has filed an objection to the Final Report and Account or the Application for Allowance of Compensation. This Memorandum Opinion and Order is issued pursuant to §§ 326, 330 and 350 of the United States Bankruptcy Code that require the Court to enter orders on professional compensation requests and enter orders closing estates. *See, In re Busy Beaver Building Centers, Inc.,* 19 F.3d 833, 840–845 (3rd Cir.1994).

On March 27, 1992, the Debtor, Michael L. Dorn, dba Old World Gardener ("Debtor"), filed a petition for liquidation under chapter 7 of the United States Bankruptcy Code. In the Schedules, the Debtor listed assets in the total amount of $6,895.00 and debts in the total amount of $28,111.15. On Schedule I— Current Income of Individual Debtor(s), the Debtor listed total monthly income of $1,500.00, and on Schedule J—Current Expenditures of Individual Debtors, the Debtor listed total monthly expenses of $1,995.00. On Schedule C—Property Claimed as Exempt, the Debtor sought to retain, among other assets, a life insurance policy pursuant to O.R.C. § 2329.66(A)(6)(b) and (c), that was scheduled as having a current market value of $2,000.00.[1]

On April 3, 1992, the Trustee was appointed, and on July 27, 1992, a creditors' meeting was conducted. Subsequently, on July 29, 1992, the Trustee filed an Application for Authority to Employ Counsel, in which he sought to retain his law firm, known as White & Associates; on August 3, 1992, the Court entered an Order Authorizing Trustee to Employ Counsel.[2]

On August 31, 1992, the Trustee filed an Objection to Property Claimed as Exempt on

1. On August 10, 1992, the Debtor filed an Amendment to Schedule C Exemptions in which the Debtor apparently further sought to exempt the life insurance policy pursuant to the "catch-all" provision of O.R.C. § 2329.66(A)(17).

2. The retention application was devoid of reference to particular assets or causes of actions to be pursued and merely requested that, "... counsel be employed to assist him (the Trustee) in the various legal problems that are now evident in the administration of the assets of this estate and to determine whether the Trustee has any interest in additional assets." This Court in a recent decision in the case of *In re Griggs,* 168 B.R. 174 (1994), has ruled that retention applications must contain more information, i.e., exact nature of the assets being pursued, projected amount of administrative expenses, projected recovery and any factors influencing the ability to collect. This change is intended to ensure that the retention and ultimate payment of professionals in chapter 7 asset cases will have some meaningful economic benefit to creditors.

the basis that the beneficiary of the life insurance policy discussed above was neither a spouse nor dependent minor of the Debtor. On September 21, 1992, the Trustee filed a Motion to Approve Compromise. In this Compromise Motion, the Trustee indicated that there was a "bona fide" dispute as to whether the cash surrender value of the life insurance policy was exempt, and sought court approval to compromise the dispute for the amount of $1,200.00, which would allow the Debtor to retain the policy free of any claims of the Trustee and the estate.

On September 21, 1992, the Trustee filed an Interim Report that indicated that the sum of $1,200.00 had been received from the Debtor on September 17, 1992, in payment for the cash surrender value of the life insurance policy. This Interim Report further indicated that the only matters remaining to be addressed in the case were the review of claims and preparation of final reporting documents, and the Trustee projected that a final report would be filed by January, 1993. Also, on September 21, 1992, the Trustee filed a Notification to File Claims that prompted the Clerk's Office to establish December 24, 1992, as the bar date for creditors to file claims.

After notice to all creditors and in the absence of any objection, on October 28, 1992, the Court entered an Order Approving Compromise regarding the life insurance policy, as requested by the Trustee. Subsequently, on December 24, 1992, the Trustee filed a Notification of Intent to Submit Final Report and a Notice to Professionals to File Fee Applications. The first Notice stated that a final report and account would be submitted to the United States Trustee, "... no later than ninety (90) days from the date of this Notice."

The file indicates that the Trustee was supplied with a claims register on January 6, 1993. On March 23, 1993, the Court entered two Orders Disallowing Claims based upon the unopposed objections of the Trustee;

however, the Final Report apparently was not submitted to the United States Trustee until November 23, 1993, and was subsequently filed with the Court on December 6, 1993. The only activity apparent from the file between the time of disallowance of claims and submission of the Final Report (approximately eight months), is the continued accrual of interest on the funds paid to the estate by the Debtor.

The Final Report discloses that the total sum of $1,228.59 was collected in this estate which is comprised of the $1,200 paid by the Debtor and the accrual of interest between September 17, 1992, and October 26, 1993, in the total amount of $28.59. No other assets were administered. Further, the Final Report details that after the payment of $163.71 in maximum trustee compensation, trustee expenses in the amount of $89.00, the payment of legal fees in the amount of $458.75 and court costs in the amount of $34.50 [3], that there will be a distribution of $482.63 to claimants holding claims in the total amount of $17,347.19. This translates into a dividend of "0.027821797" according to the Final Report. Over fifty percent (50%) of the funds collected will be paid to the Trustee and Counsel for the Trustee, if all requested fees and expenses as detailed above are awarded.

On the same day that the Final Report was filed with the Court, December 6, 1993, Debtor's Counsel filed a pleading known as a "Suggestion of Death." This pleading, a copy of which is attached to this Order, indicated that the Debtor died on December 4, 1993, and included a copy of the obituary.

At the March 31, 1994, hearing, the Court expressed two concerns.[4] First, the Court questioned the overall value of the services of the professionals in the case in view of the low level of distribution to creditors and in view of the fact that approximately fourteen months elapsed between the receipt of the funds and the submission of the Final Report that would ultimately lead to a distribution. Second, specifically, the Court questioned the propriety of some of the charges billed by

---

**3.** On December 13, 1993, the Clerk issued an Amended Certification of the Record increasing the court costs to the amount of $50.50 due to additional notice charges.

**4.** The initial hearing was scheduled for March 3, 1994, but was continued twice. The first continuance was based upon a deposition previously scheduled by the Trustee, and the second contin-

counsel for the Trustee on the basis that they constituted trustee functions that are separately compensable pursuant to § 326(a) of the United States Bankruptcy Code.[5]

In response to the concern regarding the low level of return to creditors, the Trustee in relevant part responded:

> So far as why did we collect the insurance, it is because it is a nonexempt asset of the estate. As to when $2,000 at the time was considered to be too little, well, is [sic] I suppose it was the judgment call of the trustee. There was a claim—the cash value was first listed at $2,000. The debtor objected. The compromise was reached at 1,200. That compromise was approved by the Court. At that time if the Court thought this was too little to pursue, then I suppose the Court could have rejected the compromise and told the trustee not to pursue assets which are not exempt. Transcript at pages 8–9.

... I don't know what the register (claims register) is going to present at the time I collect the funds. The two thousand may have been—we may have had a 10 or 15 percent of [sic] distribution if less creditors filed claims. Furthermore, debtors, rightfully so, in order to protect themselves lists [sic] claims that are not necessarily valid but just to protect themselves will list the creditor anyway. I cannot look at the schedule of the debtor to determine whether or not that in fact will be the claims ... Transcript at pages 14–15.

In response to the concern regarding the apparent delay between receipt of the funds and filing of a final report, the Trustee in relevant part responded:

> So far as the time since the compromise was approved in November, not September, well, it is true that the money was received then but the compromise was not signed until then [sic].... (T)here are time factors after that for notification of

uance was based upon the hospitalization of the Trustee.

5. The itemized attorney services that were questioned by the Court include:

| Date | Description | Time | Fee |
|---|---|---|---|
| 2–9–93 | Reviewed Claims | .50 | $ 62.50 |
| 11–22–93 | Review Final Report | .50 | $ 62.50 |
| | Review Order for Payment | .30 | $ 37.50 |
| | Review Report of Distribution | .20 | $ 25.00 |
| | Review Final Account | .20 | $ 25.00 |
| | | TOTAL = | $212.50 |

The itemized paralegal services that were questioned by the Court include:

| Date | Description | Time | Fee |
|---|---|---|---|
| 9–21–92 | Prepared Notification to File Claims | .20 | $ 9.00 |
| | Filed Document | .20 | $ 9.00 |
| 12–24–92 | Prepared Notice of Intent & Notice to Professionals | .25 | $ 11.25 |
| | Filed Document | .20 | $ 9.00 |
| | | TOTAL = | $ 38.25 |

TOTAL OF FEES QUESTIONED = $250.75

claims, notice of intent, await for the Court's certification of the register which can take a significant amount of time until we find the register, review the claims, prepare objections to the claims, responses to those objections, and then file the final report. So far as why we filed the final report in the order that we do, [sic] we file them because the U.S. Trustee, Charles Caldwell, instructed us that we are to close out cases in the case order.[6] We close out the 1988 cases first and then the 1989 cases and then the 1990 cases in that order on instructions from the U.S. Trustee. We do not close them in the order in which the money is received and the last asset is received because the instructions we received were to close out the cases in the order of those [sic] of what year the case was filed. The case was filed in '92 and in '93 the final report was filed.[7] Transcript pages 9–10.

In response to the Court's specific concerns with reference to the nature of the services, the Trustee in relevant part stated:

So far as the fees are concerned, I will point out to the court that under 4.47 [sic] of the local rules I did not have to itemize my fee at all. If what you are saying is because I did, I shall be punished for it from now on, I will file in those cases where the trustee fee is under 500 simply the bottom line. It is unfair I am giving the Court more information; that the Court is making a greater inspection than is required under 4.47 [sic]. Transcript at page 10.[8]

... [M]y office takes probably close to four to six hours to prepare a final report. By the time we get through the fees, reviewing every single document in the case to make sure it is done properly, you will find

that the final report that my office submits to the office has to be amended.... After we review all that and I think there is [sic] legal implications both to the reviewing of claims (and final report), I might point out the success I have had in my objections to claims. It is in part because if that were done by a nonlawyer, he would not be so successful. He is not aware of all the rules that are involved with all claims and what constitutes a proper claim. I think it is justified.... Transcript at page 16.

During the course of the hearing the representative of the United States Trustee's Office was given an opportunity to respond, and in relevant part stated:

In looking at Mr. White's fee application, I would agree with the Court that it appears as if he is trying to charge for some trustee work in reviewing the final report order. Perhaps in the future when we review these fees ... our office will be a little more circumspect and ask the trustees to give a little more detail in the future. I think I can go back and let the other attorneys know perhaps we should take a close look at these fees. A lot of times a phone call will suffice if we give the trustee a phone call, ... this looks like trustee work and they say no, we let it go. But we will be more careful in the future with that ...[9] As far as collecting and distributing only two percent to creditors, ... It is a very difficult question. I suppose a two percent distribution is better than a zero percent distribution. That is probably not a very good answer ... but not everybody files claims too. I suppose maybe if we only had one claim filed in a case, somebody would get the whole pot or whatever ... Our guidelines really tell the trustees ... don't administer mostly se-

---

**6.** The relevance of this comment is not known to the Court, and it can only surmise that it is a reference to fact that the undersigned previously served as an Assistant United States Trustee for the Southern District of Ohio.

**7.** The Trustee is referencing U.S. Trustee guidelines that mandated the closing of older cases.

**8.** The Trustee is referencing the Local Bankruptcy Rule 4.4(a)(7) that allows professionals in

chapter 7 cases to seek compensation without providing an itemized statement where the amount requested is less than $500.00.

**9.** The Court is unable to interpret the significance of the lack of any filed comment by the U.S. Trustee to chapter 7 fee requests. The U.S. Trustee has the discretion to determine how it will exercise its statutory responsibility to supervise trustees and to monitor and comment upon fee applications. The judicial burden of review-

cured assets, don't spin your wheels doing something that you are not going to bring in [sic]. It is called a meaningful distribution to creditors. I honestly don't know if we put a percentage on that. That may be something that we should sit down and think about.... With respect to the report being filed so late, what Mr. White said was true ... Our office has clamped down on old cases. We have indeed told the trustees if you have any pre–1990 cases, you get those done before you do anything else. I believe Mr. White had—I am not sure how many old cases he had but he in fact was complying with our directive in that regard.... Transcript at pages 11–12.

The Court has deemed it important to quote the transcript at length because the statements made highlight the complexities and attitudes at times exhibited when questions are raised regarding the administration of chapter 7 asset cases, including the retention and payment of professionals. It is hoped that a discussion of these issues in this opinion will serve as guidance in other chapter 7 cases.

At the end of a chapter 7 asset case, the Court is faced with the difficult task of awarding professional fees, which requires a determination of what constitutes "reasonable compensation for actual, necessary services ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title ..." 11 U.S.C. § 330(a)(1). The task is difficult because it involves an after-the-fact analysis of the value of the services. Also, the fact that economic, "purse string" controls are absent, which are normally paramount in a typical attorney-client relationship, exacerbates the problem. In most chapter 7 asset cases, the trustee and the attorney for the trustee are the same person, so there is no "client" in the traditional sense that exercises economic judgment as to what actions should be pursued and those that will have little or

no benefit given the expense and anticipated level of recovery.

■■■ Economic judgment should be exercised before professionals are retained and before assets are administered. In the future, this Court will expect and look for such judgment, and will not enter retention requests or approve compromises without some expression as to the possible economic benefit to creditors. As of the date of this Order, all trustees in cases before the undersigned will have to demonstrate the economic merit or benefit of their actions, in retention and compromise motions. The information required will include the exact nature of the assets being pursued, projected administrative expenses, projected return to creditors, and any factors affecting the ability to collect. In the instant case, it is too late to exercise any prior control, and the Court only has the option of approving or disallowing, in whole or part, the requested fees.

■■■ We must be mindful that there are two goals in the administration of chapter 7 cases, i.e., to administer nonexempt assets as expeditiously as possible for the benefit of creditors, and to provide a fresh start to debtors. See 11 U.S.C. § 704(1); H.R.Rep. No. 595, 95th Cong., 1st Sess. 379 (1977), S.Rep. No. 989, 95th Cong., 2d Sess. 93 (1978), U.S.Code Cong. & Admin.News 5787, 6334–6335, 5879; 11 U.S.C. §§ 522 and 524; In re Ferkauf, Inc., 42 B.R. 852 (Bankr. S.D.N.Y.1984), aff'd 56 B.R. 774 (S.D.N.Y. 1985). The Court is of the opinion that the administration of this estate has provided minimal benefit to creditors, and that the primary beneficiary, assuming that all requested fees were awarded, would be the Trustee and his "alter ego", Counsel for the Trustee. See In re Riverside–Linden Inv. Co., 85 B.R. 107, 110–11 (Bankr.S.D.Ca.1988), aff'd 99 B.R. 439 (9th Cir. BAP 1989), aff'd 925 F.2d 320 (9th Cir.1991).

■■■ Further, the administration of this estate has had the effect of penalizing the Debtor, now deceased, who apparently felt the need to maintain life insurance. The

ing chapter 7 fees, however, would be lightened with the sure knowledge that they were reviewed by the U.S. Trustee pursuant to guidelines known

to all panel trustees and consistently applied by the U.S. Trustee.

trustee's duty to administer nonexempt assets must be tempered by reason, and should not have the effect of penalizing debtors by the administration of assets that will have little benefit to creditors but are either uniquely or significantly important to a debtor. To do otherwise, at a minimum, leaves the impression that cases are administered with primary emphasis upon generating fees and with secondary emphasis upon providing a meaningful and expeditious return to creditors.

As the Trustee stands in the shoes of the "client," he is responsible for exercising judgment as to what action is taken, and his efforts must be judged in the context of the value to creditors. While the Court agrees with the Trustee and the U.S. Trustee that the existence and level of payable claims is an important factor in determining whether a particular recovery is significant, on the day this case was commenced the Debtor scheduled in excess of $28,000.00 in debt and approximately the sum of $7,000.00 in assets. It is the Court's understanding that the Trustee also asserts that debtors tend to conservatively schedule more creditors and in higher amounts in order to protect their interests. Even taking such a factor into consideration, the sheer size of the indebtedness scheduled ($28,111.15) should have been a clue that the sum of $1,200.00, after payment of administrative expenses, would not result in significant, if any, payment to creditors. Also, the level of the monthly expenses compared to income and the lack of other assets should have raised concerns with respect to the ability to collect. The proposed dividend for some of the claimants may very well be exhausted by the costs to process the payments.

With reference to the time that elapsed between receipt of the funds and the submission of the Final Report, it is clear that some time was spent awaiting the expiration of a bar date and litigating claims, but nothing happened in this case for the approximately eight months between the conclusion of claims litigation and the submission of the Final Report. Both the Trustee and the U.S. Trustee offered as further explanation for the delay the fact that case trustees have been required to close older cases first. Assuming they are both accurate, that the U.S. Trustee guidelines were intended to require trustees to ignore newer cases to complete older cases, creditors in the current cases are in essence being penalized for a trustee's inability to close his cases expeditiously as required by § 704(1) of the United States Bankruptcy Code. The Court is not persuaded that such an illogical result was intended, and in any event it will not be countenanced by this Court.[10]

■ Turning now to the Court's specific concerns with the legal fees charged in this case, it was observed that trustee functions which are compensable pursuant to § 326(a) were being duplicatively billed as legal functions.[11] Section 704 of the Bankruptcy Code delineates the numerous duties and functions of trustees. In relevant part, § 704 provides that the trustee shall:

(1) collect and reduce to money the property of the estate . . . and close such estate as expeditiously as is compatible with the best interests of parties in interest;

(2) be accountable for all property received;

. . . . .

(4) investigate the financial affairs of the debtor;

(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

. . . . .

(7) unless the court orders otherwise, furnish such information concerning the es-

---

**10.** The Court notes that the United States Trustee has the statutory authority to appoint, supervise, suspend and remove trustees from the panel. *See,* 28 U.S.C. § 586(a)(1). Further, the United States Trustee may file a motion to request the removal of a trustee from a particular case for cause. 11 U.S.C. § 324. Such means may be employed by the United States Trustee to ensure that all cases, including those that may be characterized as older, are closed in a timely manner.

**11.** It should be noted that § 326(a) merely specifies the maximum level of compensation payable to trustees as authorized by the Court pursuant to § 330 of the Bankruptcy Code.

tate and the estate's administration as is requested by a party in interest;

. . . . .

(9) make a final report and file a final account of the administration of the estate with the court and with the United States Trustee.

11 U.S.C. § 704.

■ Pursuant to § 327(d) of the Bankruptcy Code, courts may authorize trustees to act as their own counsel or accountant, so long as such representation "... is in the best interest of the estate." Where this dual role has been authorized, however, compensation to the alter ego counsel or accountant may be allowed, "... only to the extent that the trustee performed services as attorney or accountant for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant for the estate." 11 U.S.C. § 328(b); *See, In re Vlachos,* 61 B.R. 473, 479 (Bankr.S.D.Oh. 1986); *In re Butterbaugh,* 135 B.R. 507, 509 (Bankr.N.D.Oh.1991); *In re Kuhn,* 150 B.R. 825, 826–27 (Bankr.M.D.Fla.1993). Also, the compensation of paraprofessionals performing trustee functions is limited to the maximum payable to the trustee pursuant to § 326(a). *In re Stewart,* 151 B.R. 255 (Bankr.C.D.Ca.1993); *In re Santangelo and Company, Inc.,* 156 B.R. 62 (Bankr.D.Colo. 1993); *contra, Cavazos v. Simmons,* 90 B.R. 234 (N.D.Tex.1988). As stated by the Court in *In re Vlachos:*

> ... (I)t would be as erroneous to award compensation at attorney rates for services that are duties of the trustee as it would be to fail to award compensation to a trustee who rendered services as an attorney separately from duties as a trustee. In the first instance the inequity would be in unjustly enriching the trustee at the expense of the estate's other claimants and in the second instance the inequity would be in unjustly enriching the estate at the expense of the attorney. While the above

statement might appear to be mere tautology, it establishes a parameter for the court's decision in an area where there are often insufficient assets to satisfy all claimants and the court is typically called upon to balance competing claims to the already insufficient fund. *In re Vlachos* at 479.

A review of the fee application filed by Counsel for the Trustee, as detailed in note five, indicates that a significant portion of the time in this case was expended in preparing and filing documents that are part of the final report process, reviewing the final reports and payment orders and reviewing claims. The preparation, review and filing of the Final Report and associated documents, such as the Notice of Intent and Notice to Professionals, constitutes the performance of trustee functions. 11 U.S.C. § 704(9). In addition, the examination of the routine claims in this case constitutes the performance of trustee functions. 11 U.S.C. § 704(5); *In re Holub,* 129 B.R. 293, 295–97 (Bankr.M.D.Fla.1991).

The Court understands that the closing and final report process is necessarily detailed and time consuming and subject to amendments; however, by statute the trustee and not any professional or paraprofessional retained or employed by the trustee is responsible for closing the case and filing final accounts. 11 U.S.C. § 704(1) and (9). Also, by statute it is assumed that the trustee is knowledgeable regarding the allowance and priority of claims since the trustee is obligated to review and object to claims where appropriate. 11 U.S.C. § 704(5). To hold otherwise would be tantamount to concluding that trustees must be attorneys, which is clearly not the case. *See,* 28 CFR § 58.3.

Compensation for such services is provided through § 326(a) of the Bankruptcy Code which sets forth a formula for paying trustees for their services based upon funds collected and disbursed. It is not appropriate to address any perceived deficiency in the level of trustee compensation by mischaracterizing trustee duties and functions as legal functions. It is hoped, however, that in the near future the level of § 326(a) compensation will be increased by Congress. Also, trustees should be encouraged to minimize the expense of the closing process by increas-

ing their proficiency and reducing the number of amendments.

■ The court in *In re Holub* developed a checklist of items that constitute trustee functions that are not compensable as attorney functions, which this Court intends to adopt. From the date of this Order, all trustees in cases before the undersigned will be required in the administration of cases and preparation of their fee applications to follow the parameters in this Order. Those items that constitute Trustee functions include:

1. Preliminary review of the debtor's schedules and examination of the debtor at the § 341 meeting.

2. Preparation of the report of no distribution and the report of conclusion of § 341 meeting (minutes).

3. Telephone conversations or written communications with the debtor, creditors, or attorneys regarding the general status of the case.

4. Preparation of all required reports for the United States Trustee.

5. Performance of all routine trustee banking matters, including deposits of funds, issuance of checks, and reconciliation of bank accounts.

6. Distribution of funds to creditors.

7. Basic negotiation for recovery of assets.

8. Examination of simple proofs of claim and the making of routine objections to claims. The preparation of objections to claims raising legal, as distinguished from routine objections can be compensable to a professional....[12]

9. Initial review of the debtor's financial affairs or records. After legal issues or problems are identified, in depth analysis of the debtor's financial affairs or records can be compensable if properly documented.

10. Supervision of professionals....

.    .    .    .    .

*In re Holub,* at 295–96.

■ Further, this Court adopts the general description of compensable legal functions set forth by the *Holub* court, as follows:

In general, professional time is limited to those tasks performed while representing the trustee in the prosecution of contested matters and adversary proceedings, attendance at court hearings in the capacity of attorney or other professional when the trustee has an interest, the preparation of professional related applications, and the performance of other specialized services that cannot be performed practically or lawfully by the trustee without engaging the services of a professional.

*In re Holub,* at 296.

During the hearing, the Trustee expressed the view that he was being penalized for providing an itemized statement, and suggested that if no itemized statement were provided pursuant to Local Rule 4.4(a)(7), his services would not have been scrutinized. Transcript at page 10. There are two responses. First, the Local Rule is an accommodation of the Court that can in no way be used to circumvent the statutory obligation of this Court to make a determination on fees. Accordingly, in all cases before the undersigned administered by this Trustee, including those where the requested fees are below the sum of $500.00, a detailed itemized statement will be required.

Second, it is the view of this Court that the difficulty of dealing with potential duplication is exacerbated by the lack of time records for services performed by the Trustee in this case and in cases administered by other trustees in the Eastern Division. *See In re Vlachos,* at 480. It has been stated:

(A)n attorney-trustee petitioning for payment carries the responsibility of carefully discriminating between those services

---

**12.** Routine objections that will not be compensable as legal work include those based upon lack of documentation or duplication. Challenges to the validity or extent of liens may be compensable. Also, in cases where there are claims that present unique or complex legal issues, attorney compensation may be awarded for the review and any objections to such claims. It will be incumbent upon the applicant to make sure ample information is supplied in the itemized statement for the Court to determine whether the claims work is compensable as legal work.

strictly legal in nature and those which inhere in the office of the trustee ... The very quality, however, which makes the attorney particularly qualified to act as trustee, unfortunately beclouds the matter of compensation. *In re Red Cross Hospital Assoc., Inc.,* 18 B.R. 593, 594 (Bankr. W.D.Ky.1982) cited in *In re Vlachos* at 480–81.

■ To remedy this problem, this Court intends to follow the approach of Judge Waldron in the *Vlachos* case and require, where the trustee and attorney for trustee are the same, that an itemized statement of the trustee services performed be submitted along with the itemized statement of the attorney. *In re Vlachos,* at 481. If separately identified, the itemization of trustee functions performed may be merged into the attorney's itemized statement for presentation to the Court. In all chapter 7 cases before the undersigned where final reports are filed after the date of this Order, an itemized statement of trustee services performed will be required. Where contemporaneous records have not been maintained in cases administered before the date of this Order, summaries of work performed will be acceptable.

■ Turning to the case at hand, the Court has concluded that adjustments to compensation of the Trustee and Counsel for the Trustee are appropriate. Regarding the Trustee compensation, the Court has concluded that the administration of this estate has had limited benefit to creditors, has been the subject of some delay in administration, and had a punitive impact upon the Debtor. Accordingly, the Court concludes that the maximum fee under § 326(a) as requested by the Trustee is not warranted. The Trustee compensation will be limited to fifty percent ($81.85) of the maximum fee in addition to the sum of $89.00 in expenses as requested. In deriving this reduction, the Court sought to strike a balance between encouraging the administration of cases having a meaningful benefit to creditors without making trustees guarantors of a good result.

Regarding compensation for Counsel for the Trustee, the Court concludes that all of the services detailed in note five constitute trustee functions, and are not compensable as attorney services. Accordingly, compensation to Counsel for the Trustee shall be reduced by the sum of $250.75 which will result in an award of $208.00 in legal fees.

During the course of the hearing the Trustee expressed that his right to due process may have been abridged because the Court did not detail its concerns until the time of the hearing. Accordingly, if the Trustee determines that additional information or evidence should be provided to the Court, this Order is without prejudice to right of the Trustee to request reconsideration in accordance with the Bankruptcy Rules.

IT IS SO ORDERED.

### APPENDIX

#### SUGGESTION OF DEATH

Now comes the counsel for debtor, to notify the Court of the death of Michael Lee Dorn, the debtor in this case, on December 4, 1993.

> (s) <u>Pamela N. Maggied</u>
> Pamela N. Maggied,
> Attorney for Debtor

**DORN**

Michael Lee Dorn, 36, of Columbus, died at 1:55 a.m. Saturday, December 4, 1993 in his residence. Born August 23, 1957 in Columbus, he was a son of Donald Lee and Vernamae (Robinson) Dorn. For the past thirteen years, he owned and operated the Old World Gardener landscaping business in Columbus. He was a member of the Zenos Christian Fellowship in Columbus. Survived by parents, of Sedalia; 2 sisters, Mrs. Rick (Debbie) Hamby of Whitely City, Ky., Mrs. Roger (Connie) Parker of Sedalia; brother, Philip Dorn, presently in Honduras; maternal grandparents, Lloyd and Irene Robinson of Washington C.H.; 2 nieces, Leslie Hamby and Cindy Parker; 3 nephews, Ian Hamby, Roger Lee and Jason Parker; aunts, uncles, and cousins. He was preceded in death by a brother, Steven Dorn; paternal grandparents, Russell and Louise Dorn. Services will be conducted at 11 a.m. Monday in the EBERLE FUNERAL HOME, London. Rev. Gordon Ell officiating. Interment will follow in Range Township Cemetery. Friends may call at the funeral home from 2–

8 p.m. Sunday. If they wish, friends may make memorials to the Urban Concern AIDS Ministry C/O Eberle Funeral Home, London; or to the Gideon Memorial Bible Fund. A memorial service will be conducted at a later date at the Zenos Christian Fellowship 888 Freeway Drive, Columbus, Ohio.