**Bruce J. BRIZZOLARA, Plaintiff,**

**v.**

**FISHER PEN COMPANY, an Illinois corporation, and Paul C. Fisher, individually and as Trustee of the Paul Fisher Voting Trust, Defendants.**

**Adv. No. 93 A 00737.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Sept. 13, 1993.

Robert L. Sklodowski, Sklodowski Franklin Puchalski & Reimer, Chicago, IL, Michael E. Lavelle, Lavelle Juneau & McCollom, Oak Park, IL, Jerome DePalma, Las Vegas, NV, for plaintiff Bruce J. Brizzolara.

Steven B. Towbin D'Ancona & Pflaum, Roseann Oliver, Caesar A. Tabet, Pope & John, Chicago, IL, Lenard Schwartzer, Hale Lane Peek Dennison & Howard, Las Vegas, NV, for plaintiff William R. Quinlan, Receiver of Fisher Pen Co.

Alan H. Zenoff, Zenoff & Zenoff, Chicago, IL, for Midwest Bank & Trust Co.

Marty J. Schwartz, Chicago, IL, William R. Urga, Stephanie M. Smith, Mark J. Wenker, Jolley Urga Wirth & Woodbury, Las Vegas, NV, for defendant Paul C. Fisher.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTIONS TO ABSTAIN, REMAND, AND CHANGE VENUE

JACK B. SCHMETTERER, Bankruptcy Judge.

### INTRODUCTION

The debtor Paul C. Fisher ("Fisher") recently filed his bankruptcy proceeding under Chapter 11 of the Bankruptcy Code, Title 11 U.S.C. It pends in Nevada. Two years earlier, Fisher had been sued by plaintiff Bruce Brizzolara ("Brizzolara") in the Circuit Court of Cook County, Illinois, along with the Fisher Pen Company. Following several evidentiary hearings, interim orders entered by the Illinois judge favored Brizzolara. Fisher's bankruptcy filing followed. Fisher originally filed removal papers to bring the state action here, then moved here to transfer venue of the removed case to the Nevada bankruptcy judge. Along with the Receiver appointed by the State Court, Brizzolara moved this Court to abstain and also to remand this case back to the Illinois Court.

Following an evidentiary hearing on all these pending motions, the parties rested and final argument was taken. Proposed Findings and Conclusions were considered, along with objections thereto. Pursuant to Findings of Fact and Conclusions of Law entered here under Fed.R.Bankr.P. 7052 and 9014, Brizzolara motions to abstain and remand are allowed, that of Fisher to change venue is denied.

### I. FINDINGS OF FACT

1. Brizzolara is a resident of Illinois. He currently is employed as President of the Fisher Pen Company, and is a shareholder of that corporation.

2. The Fisher Pen Company is an Illinois corporation with its principal place of business at 9240 West Belmont Avenue, Franklin Park, Illinois. It manufactures, markets, and sells pens and pen refills. It owns machinery, equipment, tools, and fixtures, all of which are located at its principal place of business in Franklin Park, Illinois. Corporate books and records are maintained at its principal place of business in Franklin Park, Illinois. It employs forty people in Franklin Park, and has eighty salespeople worldwide.

3. Paul C. Fisher is a resident of Nevada and is a shareholder of the Fisher Pen Company. He claims to do business in Nevada under the name and style of "Fisher Space Pen Company".

4. William R. Quinlan is a resident of Illinois and is the Receiver of the Fisher Pen Company pursuant to Order of the Circuit Court of Cook County, Illinois, Chancery Division.

5. On January 24, 1991, Brizzolara, as shareholder of the Fisher Pen Company, filed a lawsuit in the Circuit Court of Cook County, Illinois, Chancery Division, against the Fisher Pen Company and Paul C. Fisher in a case entitled *Brizzolara v. Fisher Pen Co., et al.*, No. 91 CH 747 (Cir.Ct., Cook Cty., Ch.Div.IL) (the "Illinois Action").

6. The Illinois Action was assigned to Judge John N. Hourihane of the Circuit Court of Cook County, Illinois, Chancery Division ("Judge Hourihane" or the "Illinois State Court"). Until the Illinois Action was removed to this Court by Fisher pursuant to 28 U.S.C. § 1452(a) on June 17, 1993, the Illinois Action had been pending before and partially adjudicated by Judge Hourihane and the Illinois Appellate Court, First District.

7. In his Complaint and amendments thereto, Brizzolara has sought various equitable reliefs pleaded under Illinois law, including injunctive and declaratory relief, specific performance, and court-ordered buy-out or dissolution of the Fisher Pen Company. Specifically, Brizzolara has brought nine separate claims in the Illinois Action: *Count I* (for injunctive relief to restrain Fisher from terminating Brizzo-

lara's employment as President of Fisher Pen Company); *Count II* (for declaratory relief that the Fisher Voting Trust is irrevocable); *Count III* (for specific performance of the Brizzolara Employment Agreement, Brizzolara Stock Option Agreement, and Fisher Voting Trust); *Count IV* (for removal of Fisher as a director of the Fisher Pen Company); *Count V* (for an accounting); *Count VI* (for cancellation of a Lease); *Count VII* (for dissolution of the Brizzolara/Fisher Partnership); *Count VIII* (for dissolution of the Fisher Pen Company or alternative remedies under the Illinois Business Corporation Act); and *Count IX* (for a shareholder's derivative action).

8. Fisher submitted to the jurisdiction of the Illinois State Court and at various times has appeared through counsel and *pro se.* Fisher has filed his Answer and Affirmative Defenses and has brought counterclaims in the Illinois Action. Specifically, Fisher filed four separate counterclaims: *Count I* (for rescission of Brizzolara's Employment Agreement); *Count II* (for rescission of Brizzolara's Stock Option Agreement); *Count III* (for declaratory relief that the Fisher Voting Trust has been canceled); and *Count IV* (for injunctive relief against, and for an accounting of damages resulting from, Brizzolara's alleged breaches of fiduciary duty).

9. All claims and counterclaims in the Illinois Action are under Illinois law, as presently pleaded.

10. Judge Hourihane expended substantial judicial time and effort on the Illinois Action. He conducted many evidentiary hearings on some of the claims asserted therein, and he entered various interlocutory orders. Among other hearings, Judge Hourihane held evidentiary hearings on July 6, July 7, July 9, and July 10, 1992, September 16, 1992, and March 3, 1993, and he heard testimony from many witnesses, including Brizzolara, Fisher, Deborah Birutis, Leonard Cahill, Beth Colleran, Robert Dagget, David Fall, Christine Mear, Joachim Peter Michaelis, Helmut Mueller, Dale Talbot, Philip Rock, and William Langly.

Several of the witnesses who have testified are residents of Illinois.

11. On September 16, 1992, based upon testimony heard, Judge Hourihane made the following interlocutory rulings regarding Count VIII of the Complaint, subject to further evidence to be heard:

- Brizzolara owns 45% and Fisher owns 55% of the outstanding common stock of Fisher Pen Company (Transcript of Trial on September 16, 1992 at 6);
- Brizzolara is President and Chief Executive Officer of Fisher Pen Company (*id.* at 6);
- Fisher was enjoined from selling pens in competition with the Fisher Pen Company and from disparaging its products (*id.* at 9);
- Fisher has repeatedly violated the corporate by-laws of Fisher Pen Company (*id.* at 11);
- In "direct contravention" of the corporate by-laws, Fisher has improperly taken numerous salaries, including $12,000 in 1990, $60,000 in 1991, and $127,000 in 1992 (*id.* at 11);
- Fisher has repeatedly breached his fiduciary duties to the Fisher Pen Company and has misappropriated various corporate opportunities (*id.* at 12–14); and
- Fisher has engaged in a continuing course of "oppressive conduct" (*id.* at 16).

12. In accordance with the rulings on September 16, 1992, Judge Hourihane concluded as a matter of Illinois law that a court-ordered buy-out of the Fisher Pen Company would be an appropriate remedy to resolve the Illinois Action. However, subsequently, he indicated that he might also consider the alternative, corporate dissolution.

13. On March 5, 1993, Judge Hourihane appointed William R. Quinlan as Receiver of the Fisher Pen Company pending final resolution of the Illinois Action, and also enjoined Fisher from soliciting any customers of "Fisher Pen Company".

14. Fisher appealed that part of the March 5, 1993 Order that enjoined him

from soliciting any customers of Fisher Pen Company. On April 1, 1993, the Illinois Appellate Court, First District, denied Fisher's appeal.

15. On March 9, 1993, Judge Hourihane issued the "Charge" (instructions) to the Receiver. That Charge set forth the Receiver's duties and responsibilities regarding management of the Fisher Pen Company and administration of the receivership. Under Illinois law, and under the Charge, the Receiver is to report to Judge Hourihane, file interim reports with that Judge, and receive directions and instructions from him.

16. In accordance with the Charge to him, the Receiver has retained Mr. Denis O'Keefe ("O'Keefe"), an independent business consultant, to assist the Receiver in day-to-day business operations of the Fisher Pen Company. O'Keefe is a resident of Illinois.

17. In accordance with the Charge, the Receiver has also retained Mr. William Hass ("Hass"), a partner in the accounting firm of Ernst & Young, to assist the Receiver in review of business operations of the Fisher Pen Company; in an inventory of Fisher Pen Company assets, including assets allegedly misappropriated; and ultimately in an accounting of compensation received by Brizzolara and Fisher from Fisher Pen Company. Hass is a resident of Illinois.

18. The Receiver has undertaken and completed several matters on behalf of Fisher Pen Company in accordance with the Charge. Among other things, he successfully petitioned the Illinois State Court to approve various purchase orders for pens and pen products from the Astro Pen Company, which is a major supplier of the Fisher Pen Company. Astro Pen Company is an Illinois corporation with its principal place of business at 9815 West Leland Avenue, Schiller Park, Illinois.

19. The Receiver also negotiated with the Midwest Bank and Trust Company, the major lender of the Fisher Pen Company, to refrain from exercising its rights to call a secured loan in the principal amount of $742,000. Under terms of the secured loan, the appointment of a Receiver triggers the right to call the entire principal amount of the secured loan plus accrued interest. The Midwest Bank and Trust Company is located in Melrose Park, Illinois.

20. Fisher filed objections with Judge Hourihane to various of the Receiver's petitions, including the petition to approve purchase orders with Astro Pen Company. Judge Hourihane overruled all the Fisher objections.

21. Fisher has acknowledged that he does not believe the Illinois State Court is a fair forum. Since he has not fared successfully in the Illinois Court, he now seeks another forum.

22. The Receiver has completed some of the items set forth in the Charge to him, but has not completed all of his assigned tasks and responsibilities. He will be required to appear before Judge Hourihane in the future to receive approval of certain actions, for direction, and to submit reports to the Court.

23. At a status hearing on March 26, 1993, Judge Hourihane set April 26, 1993 as a status date for purposes of setting trial on some or all remaining issues in the Illinois Action. He further indicated that he had not decided whether the appropriate remedy under Count XIII of the Complaint would be a court-ordered buy-out of the Fisher Pen Company or dissolution under Illinois law.

24. Effective March 31, 1993, Judge Hourihane closed all discovery in the Illinois Action.

25. The Illinois Action has been partly resolved. The State Court judge has expended significant time and effort toward resolution of objections between the parties.

26. If the Illinois Action is not remanded back to the Illinois State Court, much of the case previously tried would be relitigated, and much of the testimony likely would have to be repeated in Nevada.

27. If the Illinois Action is not remanded to the Illinois State Court, the ability of this Receiver to act would be jeopardized.

28. The April 26 status date did not produce a trial date. Fisher's bankruptcy filing intervened. On April 6, 1993, Fisher, "d/b/a Fisher Space Pen Company", filed his voluntary petition for bankruptcy reorganization, now pending before a United States Bankruptcy Judge in the District of Nevada (the "Nevada Bankruptcy Judge").

29. On June 11, 1993, the Receiver filed before the Nevada Bankruptcy Judge his motion to modify the automatic stay to allow the Illinois State Court to enforce its orders, including its injunctions, and to complete the adjudication of the Illinois Action. He also filed an adversary complaint seeking to enforce certain orders of the Illinois State Court, and to impose a constructive trust on certain earnings of the Fisher Space Pen Company.

30. On June 17, 1993, Fisher filed with this Court his Notice of Removal of the Illinois Action pursuant to 28 U.S.C. § 1452(a) and Fed.R.Bankr.P. 9027. In his Notice of Removal, Fisher asserts that the Illinois Action is a core proceeding related to his Nevada bankruptcy petition. *Id.* at 2.

31. On June 25, 1993, the Receiver filed with this Court his Statement pursuant to Fed.R.Bankr.P. 9027(e). In that Statement, he denies the allegation in Fisher's Notice of Removal that the removed state law claims in the Illinois Action constitute a core proceeding, and the Receiver does not consent to entry of final orders or judgment by a Bankruptcy Court.

32. Also on June 25, 1993, the Receiver filed with this Court his Motion for Abstention and Remand pursuant to 28 U.S.C. §§ 1334(c)(2), 1334(c)(1), and 1452(b).

33. On June 28, 1993, Brizzolara filed his Motion for Abstention and Remand pursuant to 28 U.S.C. §§ 1334(c)(2), 1334(c)(1), and 1452(a), and has adopted the Receiver's pleadings.

34. On July 8, 1993, the Nevada Bankruptcy Judge modified the automatic stay to allow the Receiver to perform his administrative functions. She also allowed the non-debtor parties to proceed before this Court to seek the relief they pray for here. Additional stay issues remain to be determined by the Nevada Bankruptcy Judge.

35. On July 9, 1993, Fisher filed here his Motion to Change Venue of this Adversary Proceeding pursuant to 28 U.S.C. § 1412, seeking a transfer to the Nevada Bankruptcy Judge.

36. On July 20, 1993, oral arguments were heard on the Receiver's Motion for Abstention and Remand, Brizzolara's Motion for Abstention and Remand, and Fisher's Motion for Change of Venue of Adversary Proceeding.

37. On August 16, 1993, an evidentiary hearing was held at which the parties and Receiver introduced testimony and documentary evidence relevant to the pending motions herein. Subsequently, the parties submitted proposed Findings and Conclusions and objections thereto. At oral argument on the objections, some ·were sustained and changes made accordingly. Those not sustained were overruled as without merit and for reasons set forth on the record during argument and contained herein.

38. Any Finding of Fact herein that contains a conclusion of law will stand as an additional Conclusion of Law, and any Conclusion of Law herein that contains a finding of fact will stand as an additional Finding of Fact.

## II. *CONCLUSIONS OF LAW*

1. The Nevada Bankruptcy Judge has effectively modified the automatic stay to allow this Court to rule on the pending motions.

2. Pursuant to 28 U.S.C. § 157(a) and Rule 2.33(A) of the Rules of the United States District Court for the Northern District of Illinois, any and all cases arising under the Bankruptcy Code, and any and all proceedings arising in or related to any case under the Bankruptcy Code, are automatically referred to the bankruptcy judges of this judicial district for hearing.

■ 3. Motions for change of venue, abstention, and remand are core proceedings under 28 U.S.C. § 157(b)(2)(A). *In re F/S Airline II, Inc.*, 67 B.R. 428, 432 (Bankr.W.D.Pa.1986); *In re Thomasson*, 60 B.R. 629, 630–32 (Bankr.M.D.Tenn. 1986); *Allied Mechanical and Plumbing Corp. v. Dynamic Hostels Hous. Dev. Fund Co.*, 62 B.R. 873, 878 (Bankr. S.D.N.Y.1986); *In re Clark*, 127 B.R. 351 (W.D.N.C.1991).

■ A bankruptcy judge also has authority to enter an order of abstention pursuant to § 1334(c). *In re Chapman, III*, 132 B.R. 153 (Bankr.N.D.Ill.1991); *Allied Mechanical and Plumbing Corp. v. Dynamic Hostels Hous. Dev. Fund Co.*, 62 B.R. 873, 878 (Bankr.S.D.N.Y.1986); *In re Nexus Communications, Inc.*, 55 B.R. 596, 597 (Bankr.E.D.N.C.1985); to remand pursuant to 28 U.S.C. § 1452(b); *In re Clark*, 127 B.R. 351 (W.D.N.C.1991); *In re Finley*, 62 B.R. 361, 365 (Bankr.N.D.Ga.1986); and to transfer a case pursuant to 28 U.S.C. § 1412; *In re Eleven Oak Tower, Ltd. Partnership*, 59 B.R. 626, 628 (Bankr. N.D.Ill.1986).

### Authority to Abstain and Remand

The first issue posed is whether a bankruptcy judge has authority to enter orders of abstention and remand. The authorities are divided. *See In re Tandem Enterprises, Ltd.*, 124 B.R. 283, 284 N. 2 (Bankr. N.E.Ill.1991); *In re Watson–Mahaney, Inc.*, 70 B.R. 578, 582 (Bankr.N.D.Ill.1987) (both cases finding that bankruptcy judges have authority to remand, as judicial officers of the district court, under 28 U.S.C. § 1452(b)); and *In re Mill–Craft*, 57 B.R. at 535–36 (bankruptcy judges may remand because a remand is a core proceeding which involves the administration of the estate under § 157(b)(2)(A)). However, compare with *Western Helicopters, Inc. v. Hiller Aviation, Inc.*, 97 B.R. 1, 7 (E.D.Cal. 1988) and *In re Newman*, 61 B.R. 27, 29–30 (Bankr.D.N.M.1986) (both cases finding that, because remand is a non-appealable order, it may not be entered by an Article I bankruptcy judge).

Title 28 U.S.C. § 1452(a) states that claims may be removed to the "District Court" and makes no mention of any "bankruptcy court". Indeed, under the Bankruptcy Code, there is no legal entity known as a "bankruptcy court". There are only bankruptcy judges who are judicial officers of the District Court and who collectively are referred to as a "bankruptcy court". However, the collective reference is only a term to refer to all bankruptcy judges of the District Court as a unit of the District Court. Since bankruptcy judges collectively comprise a unit of the District Court and are judicial officers of that court who are assigned authority over bankruptcy matters by District Court orders of reference, cases may be removed to them, and such cases are considered to have been removed to a unit of the District Court. *In re Gianakas*, 56 B.R. 747, 751 (N.D.Ill. 1985) (Aspen, J.).

Under 28 U.S.C. § 151, Bankruptcy Judges are judicial officers of the District Court, and § 1452(b) states that "any court to which such claim or cause of action is removed may remand such claim or cause of action." Therefore, because under § 1452(b) a case is remanded from the court to which it was removed, and a bankruptcy judge presides as a judicial officer of the district court, it must be concluded that a bankruptcy judge may remand claims which have been removed to it. *See In re Tandem Enterprises*, 124 B.R. at 284 n. 2 ("a bankruptcy court may remand a cause of action as a unit of the district court") and *In re Watson–Mahaney*, 70 B.R. at 582 ("it must be reasoned that remand by the Bankruptcy Court is the same as remand by the District Court").

In support of Fisher's position that a bankruptcy judge lacks authority to enter final orders for remand or abstention, he cites *In re Futura Industries*, 69 B.R. 831 (Bankr.E.D.Pa.1987); *In re First Landmark Development Corp.*, 51 B.R. 25 (Bankr.M.D.Fla.1985); *In re Pacor Inc.*, 72 B.R. 927 (Bankr.E.D.Pa.1987); *In re Corporacion de Servicios Medicos Hosp.*, 805 F.2d 440 (1st Cir.1986); *In re Nilsson*, 42 B.R. 587 (Bankr.C.D.Cal.1984). Such cases

have held that decisions to abstain pursuant to U.S.C. § 1334(c)(2) do not, by definition, involve matters arising under Title 11, and therefore only district court judges were said to possess the jurisdictional authority to enter such orders. *In re Corporacion de Servicios Medicos Hosp.*, 805 F.2d at 443.

In *Corporacion,* the First Circuit's primary reason for concluding that bankruptcy judges lack jurisdiction to enter final removal and abstention orders was the constitutional issue then presented of whether a bankruptcy judge could enter a final and non-appealable order. 805 F.2d at 443; *see also In re Pacor,* 72 B.R. at 932 (citations omitted); *In re First Landmark Development Co.*, 51 B.R. at 27. The First Circuit opinion stated that, because a bankruptcy court's decision to abstain pursuant to 28 U.S.C. § 1334(c)(2) does not "by definition" involve matters arising under Title 11, only district court judges possess the jurisdictional authority to enter such final orders. *Corporacion,* 805 F.2d at 443.

It is not surprising that Fisher only cites pre–1990 cases on the jurisdictional issue. The jurisdictional problems cited in *Corporacion* were remedied by the Judicial Improvements Act of 1990. Pub.L. 101–650. Prior to 1990, § 1452(b) made unreviewable a decision to grant or deny a remand request, presenting concerns as to the constitutionality of bankruptcy judges entering non-reviewable orders. *In re Pacor,* 72 B.R. at 932 (citations omitted). The 1990 amendment to § 1452(b) eliminated the constitutional concerns about the authority of an Article I judge to order remand by allowing a district judge to hear appeals from such remands. *In re Tandem Enterprises*, 124 B.R. at 284 n. 2; *see In re Southern Technical College, Inc.*, 144 B.R. 421 (Bankr.E.D.Ark.1992); *In re Warren,* 125 B.R. 128, 133 (Bankr.E.D.Penn.1991).

Apart from removing the constitutional issues presented when a bankruptcy judge enters a remand order, the Judicial Reform Act of 1990 (the "1990 Amendments") also clarified Congress' intent that bankruptcy judges have core jurisdiction to enter remand orders. While the 1990 Amendments did not specifically state that a remand order constitutes a core proceeding within a bankruptcy court's jurisdiction pursuant to 28 U.S.C. 157(b)(2)(B), their context reveals intent to resolve the jurisdictional issue presented by a bankruptcy court's entry of a final remand order. The legislative history of the 1990 Amendments to the former § 1452 certainly made that clear:

> The statutes provide that bankruptcy judges' orders deciding certain motions (motions to abstain in favor of, or remand to, state courts) are unreviewable "by appeal or otherwise." Because bankruptcy judges may enter [final] orders only if there is appellate review in an Article III court, one result of this limitation is that bankruptcy judges cannot make final judgments in such cases even when they clearly involve "core proceedings."

> [The 1990 Amendments] would authorize bankruptcy judges to enter binding orders in connection with abstention determinations ... and remand determinations under Title 28, subject to review in the district court.

Apart from legislative history, the language of 28 U.S.C. § 157(b)(2)(A) and (O) gives core authority for abstention and remand. The list of core proceedings in § 157(b)(2) is, by its terms, non-exclusive ("include, but are not limited to"). The context, wording, and history of the 1990 Amendments made clear their intent to include remand and abstention orders in the core bankruptcy authority.

Core authorities specified under § 157(b)(2) include "matters concerning the administration of the estate" and "other proceedings affecting the liquidation of the assets of the estate." 28 U.S.C. § 157(b)(2)(A), (O). The fact that a claim in a bankruptcy matter raises issues of state rather than federal law does not by itself determine that it is non-core. *Arnold Print Works*, 815 F.2d 165, 169 (1st Cir. 1987). Congress specifically provided that "the determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State Law." 28 U.S.C.

§ 157(b)(3). It is the nature of the proceeding—its relation to the basic function of the bankruptcy court—not the state or federal basis for the claim that makes the difference. *Arnold Print Works*, 815 F.2d at 169.

Many authorities have held that a bankruptcy judge has core jurisdiction to enter final orders necessary for the administration of the bankruptcy estate. A remand order is a core proceeding because it involves the administration of the estate under § 157(b)(2)(A). *See, e.g., In re Chapman*, 132 B.R. 153, 160 (Bankr.N.D.Ill. 1991); *In re Mill-Craft* 57 B.R. 531 (Bankr.E.D.Wis.1986); *In re Clark*, 127 B.R. 351 (W.D.N.C.1991).

Cases dealing with an analogous procedural issue have held that a bankruptcy judge has core jurisdiction pursuant to § 157(b)(2)(A) to issue an injunction, even in an otherwise related jurisdictional proceeding, in furtherance of administering that proceeding and the estate. *In re Chateaugay Corp.*, 109 B.R. 613, 620 (S.D.N.Y. 1990); *In re L & S Industries, Inc.*, 122 B.R. 987, 992 (Bankr.N.D.Ill.1991) (Schmetterer, J.); *see In re Counts*, 54 B.R. 730, 735 (Bankr.D.Colo.1985). Similarly, motions for change of venue and abstention are core proceedings under 28 U.S.C. § 157(b)(2)(A). *In re F/S Airline II, Inc.*, 67 B.R. 428, 432 (Bankr.W.D.Pa.1986); *In re Thomasson*, 60 B.R. 629, 630–32 (Bankr. MD.Tenn.1986); *Allied Mechanical and Plumbing Corp. v. Dynamic Hostels Hous. Dev. Fund Co.*, 62 B.R. 873, 878 (Bankr.S.D.N.Y.1986); *Clark*, 127 B.R. at 352 (W.D.N.C.1991).

The remand ordered in the present case aids administration of the bankruptcy estate. A determination of at least some of the parties' various claims in state court is essential, and remand is needed to allow such determination. Moreover, by withholding ruling on the pending motion to modify stay in the Nevada court, the bankruptcy judge decided that the issues here should be determined by this Court before the Nevada Court resolves the stay issues. The decision here is therefore in aid of the bankruptcy judge's authority and discre-

tion over stay issues. By remanding to the Illinois court, the decision here permits the Nevada bankruptcy judge to fine-tune her stay decision by selecting which of the issues in the state case will be handled there, and which, if any, should be forced into litigation there.

### Burden of Proof and Standing

■ 4. On the Receiver's Motion for Abstention and Remand, the Receiver and Brizzolara had the burden of proof to establish by a preponderance of the evidence that mandatory or permissive abstention is appropriate and that remand is appropriate. *See In re Chapman, III*, 132 B.R. 153 (Bankr.N.D.Ill.1991).

5. Under § 1109(b) of the Bankruptcy Code, the Receiver is a party in interest in Fisher's bankruptcy case, and accordingly had standing to bring his Motion for Abstention and Remand. In any event, Brizzolara as a creditor also has filed a Motion for Abstention and Remand or adopted the Receiver's motions, and clearly had standing to do so.

■ 6. On Debtor's Motion to Change Venue of Adversary Proceeding, he had the burden of proof to establish by a preponderance of the evidence that the requested transfer would promote the interest of justice or the convenience of the parties. *See, e.g., In re Island Club Marina, Ltd.*, 26 B.R. 505, 507 (Bankr.N.D.Ill.1983); *see generally* 1 Collier's *On Bankruptcy*, § 3.02[4] at 3–153 *et seq.* (1992 ed.).

### Jurisdiction of Nevada Bankruptcy Judge If Case Transferred

■ 7. In determining whether to abstain and remand the Illinois Action, or to transfer the Illinois Action to the Nevada Bankruptcy Judge, it is first appropriate to determine whether each of the state law claims in the Illinois Action would be within the core or related jurisdiction of the Nevada Bankruptcy Court. *See, e.g., In re Chapman, III*, 132 B.R. 153, 156 (Bankr. N.D.Ill.1991). If any of the state law claims are only related claims, then the Nevada Bankruptcy Judge would be with-

out jurisdiction to enter final judgments without the consent of the parties, *see, e.g., In re Castlerock Properties,* 781 F.2d 159, 161 (9th Cir.1986), and such consent has not been forthcoming here. Instead, that Court would only have jurisdiction to enter proposed findings of fact and conclusions of law, subject to *de novo* review by a district judge for the District of Nevada.

8. The Nevada Bankruptcy Judge sits under the United States Court of Appeals for the Ninth Circuit. Under Ninth Circuit authority, a proceeding is "core" if it is either "a cause of action created by Title 11 or one that only arises in Title 11 cases." *In re Eastport Associates,* 935 F.2d 1071, 1077 (9th Cir.1991); *see also In re Castlerock Properties,* 781 F.2d 159, 162 (9th Cir.1986) ("This circuit has interpreted *Marathon* as depriving the bankruptcy court of jurisdiction 'to make final determinations in matters that could have been brought in a district court or a state court' ") (citations omitted). Moreover, under Ninth Circuit authority, a state law contract claim that does "not specifically fall within the categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)–(N) are related proceedings under § 157(c), even if they arguably fit within the literal wording of the two catchall provisions, sections 157(b)(2)(A) and (O)." *In re Castlerock Properties,* 781 F.2d 159, 162 (9th Cir.1986).

9. The Ninth Circuit defines related jurisdiction pursuant to the test announced in *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984). *See, e.g., In re Fietz,* 852 F.2d 455, 457 (9th Cir.1988). Under that test, an action is related to the bankruptcy case if it "conceivably [could] have any effect on the estate being administered in bankruptcy." *Id.*

10. Under Ninth Circuit authority, the remaining issues in Brizzolara's Complaint in the Illinois Action relating to buy-out or dissolution and damages are not within the Nevada Bankruptcy Court's core jurisdiction. Those issues are related to the state law claims in the Illinois Action, are not created by Title 11, and do not only arise in Title 11 cases.

11. Under Ninth Circuit precedent, Counts I, II, and III of the Counterclaim as presently pleaded in the Illinois Action are not within the Nevada Bankruptcy Court's core jurisdiction. These claims are based on state law and are not created by Title 11 or only arise in Title 11 cases.

12. However, if repleaded, issues that pertain directly to the disposition of Fisher's stock in the Fisher Pen Company may be within the Nevada Bankruptcy Court's core jurisdiction. Fisher correctly points out that litigation regarding rescission and/or rejection of the stock option agreement potentially concerns property of the estate, and as such might well be pleaded to constitute a core proceeding. *In re Kincaid,* 917 F.2d 1162 (9th Cir.1990); *In re Mankin,* 823 F.2d 1296 (9th Cir.1987), *cert. denied,* 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988). Under the Ninth Circuit test for determining whether a matter is a core proceeding, an action seeking property of the debtor, as contrasted to seeking property owed to the debtor, constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(E), and also constitutes a matter "concerning the administration of the estate under 28 U.S.C. § 157(b)(2)(A)." *In re Kincaid,* 917 F.2d at 1165. Accordingly, the Illinois state court claims and counterclaims regarding specific performance and rescission or rejection of the stock option agreement might perhaps be repleaded so as to constitute core proceedings.

13. Under Ninth Circuit precedent, the issues in the Illinois Action relating to enforcement of the Illinois State Court orders and issues affecting administration of the receivership are clearly not within the Nevada Bankruptcy Judge's core jurisdiction, and are probably not within her related jurisdiction. Indeed, there is a serious question whether the Nevada Bankruptcy Court would have any authority whatsoever over the Illinois State Court Receiver and issues regarding propriety of his actions under the Charge to him issued by the Illinois State Court. The Receiver was appointed by the Illinois State Court and must report to that Court. At the very least, a transfer to the Nevada Bankruptcy

Judge of the receivership issues would likely have to be withdrawn to the Nevada District Court in order to find a court with undoubted jurisdiction. That would be a bizarre result indeed, one that could only serve Fisher's effort to find a new forum where he might fare better.

### Standards for Abstention

14. Title 28 U.S.C. § 1334(c)(2) provides that a bankruptcy judge must abstain from hearing removed state law claims where the following four requirements are present:

(1) The case is based on a state law claim or cause of action that is "related to" Title 11, rather than "arising under" or "arising in" a Title 11 case;

(2) There is no independent basis for federal jurisdiction other than the bankruptcy proceeding;

(3) A case has been commenced in a state forum; and

(4) The case can be timely adjudicated in the state forum.

Each of these requirements is present in this removed Illinois Action.

15. The Illinois Action is based primarily, if not entirely, on Illinois state law claims. As set forth above, none of the claims as presently pleaded therein are created by Title 11 and none of them arise only in a Title 11 case. Each claim concerns a dispute between the shareholders of the Fisher Pen Company, a closely-held Illinois corporation. The action is based primarily on rights asserted under Illinois law and governed largely by the Illinois Business Corporation Act, Ill.Rev.Stat. ch. 32, para. 1.01 *et seq.* Federal subject matter jurisdiction does not exist for any of the claims as presently pleaded.

16. The last two requirements of § 1334(c)(2) are also satisfied here. The Illinois Action was pending when the debtor filed his Chapter 11 case, and the Illinois State Court will be able to adjudicate expeditiously the remainder of Illinois state law issues. Many evidentiary hearings already have been held in which the Illinois State Court heard testimony of various witnesses and entered several orders, and the Illinois Action was partially adjudicated when the debtor filed his Chapter 11 case, with an appeal from one order already decided.

17. Moreover, the Receiver, who acts under the jurisdiction and at the direction of the Illinois State Court, will be able to complete his Charge and perform his obligations in the Illinois Action, but he may not be able to accomplish his Charge effectively or economically if this matter is not remanded.

18. Accordingly, this Court concludes that each requirement for mandatory abstention is present here, and that abstention is mandatory pursuant to 28 U.S.C. § 1334(c)(2).

19. Alternatively, permissive abstention is warranted "in the interest of justice, or in the interest of comity with the State Courts or respect for State law." 28 U.S.C. § 1334(c)(1); *see, e.g., In re Chapman, III,* 132 B.R. at 157; *see also Baxter Healthcare Corp. v. Hemex Liquidating Trust,* 132 B.R. 863, 868 (N.D.Ill.1991).

20. To determine whether permissive abstention is appropriate, courts consider various possible factors, including:

(1) the effect or lack thereof on efficient administration of the estate;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficulty or unsettled nature of applicable state law;

(4) the presence of a related proceeding commenced in state court or other nonbankruptcy court;

(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than the form of an asserted "core" proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden of the bankruptcy court's docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; and

(11) the presence of non-debtor parties.

*In re Chapman, III*, 132 B.R. at 157, and cases cited.

■ 21. A number of these factors apply here. First, as discussed, the Illinois Action is based on shareholder disputes in which Illinois state law issues predominate, and issues unique to bankruptcy are not pleaded. Even if certain core issues could be pleaded, the facts and evidence are so intertwined as to make it infeasible to separate the issues arising only under state law.

22. Moreover, the Illinois State Court has done considerable work on the case and has been affirmed on interlocutory appeal. It would be an enormous waste of judicial resources, and the litigants' resources, to transfer these claims at this stage of the litigation. The Nevada Bankruptcy Judge would need to expand substantial judicial resources to become familiar with the voluminous testimony and other evidence already adduced at trial before the Illinois State Court, and these resources already have been expended by the Illinois State Court and the Illinois Appellate Court.

23. Significantly, the Receiver, who acts under the jurisdiction and at the direction of the Illinois State Court, would be greatly impaired in the performance of his duties if the Illinois Action is not remanded, and the operation of the Fisher Pen Company may be adversely affected. Whether the Bankruptcy Judge in Nevada would have any authority or jurisdiction to supervise the Receiver is doubtful, and that task at least would likely be removed to the Nevada District Court if not remanded ultimately to the State Court.

24. Finally, Fisher's removal and motion to transfer at this late stage of the Illinois case, coupled with his expressed unhappiness with the Illinois court, is about as clear an instance of forum shopping as has ever been seen here.

### Standards for Remand

■ 25. The Illinois Action should be remanded to the Illinois State Court. Under 28 U.S.C. § 1452(b), "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action *on any equitable ground."* *Id.* (emphasis added); *see, e.g., Baxter Healthcare Corp. v. Hemex Liquidation Trust,* 132 B.R. 863, 867–68 (N.D.Ill.1991) (remanded to avoid duplication of judicial resources); *In re Alton Tel. Printing Co., Inc.,* 15 B.R. 367 (Bankr.N.D.Ill.1981) (remanded to avoid delay in litigation). Courts consider various factors in determining whether to remand under § 1452(b), including:

(1) duplicative and uneconomical effort of judicial resources in two forums;

(2) prejudice to the involuntarily removed parties;

(3) *forum non conveniens;*

(4) a holding that a state court is better able to respond to a suit involving questions of state law;

(5) comity considerations;

(6) lessened possibility of an inconsistent result; and

(7) the expertise of the first court.

*See, e.g., Chapman, III,* 132 B.R. at 158, and cases cited.

26. Most of these factors are applicable here. As discussed, the Illinois State Court has conducted numerous evidentiary hearings over the course of the approximately two and one-half years of litigation and has partially resolved some issues. The plaintiff would be severely prejudiced if compelled to restart the litigation before a new forum. Comity considerations warrant respecting state court decisions made after trial. The first court is knowledgeable about details concerning the parties. Finally, Fisher has not shown that this is an inconvenient forum. Indeed, he can hardly do so after litigating in it extensively.

### Considerations Against Transfer

27. Transferring these claims to the Nevada Bankruptcy Judge would clearly result in duplicative and uneconomical use of judicial resources, would present costly jurisdictional issues for the bankruptcy judge, and would undoubtedly cause delay in the final resolution of the litigation.

28. Moreover, the involuntarily removed parties would be prejudiced by the removal and transfer of the Illinois Action. Substantial expenses have already been incurred to adjudicate the litigation, and the Receiver had undertaken numerous actions pursuant to the Charge to the Receiver issued by the Illinois State Court and the further directions of the Illinois State Court. The Receiver's ability to preserve and protect the assets of the Fisher Pen Company for its shareholders would be impaired if the Illinois Action is not remanded.

29. The receivership will function most efficiently and expeditiously if the Illinois Action is remanded to the Illinois State Court. If this matter is not remanded, jurisdictional issues alone will result in unnecessary expense and delay.

30. A remand of the Illinois Action will make more likely that the ultimate result in this case is consistent with the many rulings issued to date by the Illinois State Court and affirmed by the Illinois Appellate Court. The Illinois State Court is fully able to resolve the remainder of the Illinois Action, and a bankruptcy judge should not ordinarily provide a forum where matters already litigated in State Court are reheard and retried.

31. Based on all the foregoing, it must be concluded that transfer of the Illinois Action to the Nevada Bankruptcy Court would not promote "the interest of justice" or "the convenience of the parties". 28 U.S.C. § 1412. Indeed, the interest of justice mandates that the Illinois Action should be resolved by the Illinois State Court, where it has been partially adjudicated, and where Fisher has litigated for two and one-half years. If this Court were to transfer the Illinois Action at this late date, the numerous evidentiary hearings, court orders, court rulings, and appellate decisions would be reopened to relitigation. If the Illinois Action were transferred to Nevada at this time, the extensive knowledge gained by the Illinois State Court through review of the pleadings, motions, and papers filed by the parties,. and the evidentiary and other hearings conducted by the Illinois State Court, would be lost, and the Nevada Judge would have to duplicate these judicial efforts. This process could only delay the progress of the Fisher bankruptcy case. *See In re Manville Forest Products Corp.*, 896 F.2d 1384 (2d Cir. 1990).

32. Not only would a transfer to the Nevada court result in a waste of judicial and litigant resources, but it would also be inconvenient for most of the parties and witnesses. Plaintiff Brizzolara is an Illinois resident. Defendant Fisher Pen Company is an Illinois corporation with its principal place of business in Franklin Park, Illinois. The Receiver of the Fisher Pen Company, who is now responsible for the management of the corporation, is an Illinois resident. Most of the remaining witnesses, including the Receiver's accountants and business managers, reside in Illinois. Resolution of the principal issue of the Illinois Action, the value of Fisher Pen Co., will be more expedient if the Illinois Action remains in Illinois. *See, e.g., Eleven Oak Tower*, 59 B.R. at 626 (bankruptcy case transferred from Illinois to Missouri where day-to-day records, day-to-day supervisors, the real property, tenants, creditors, and witnesses were located in Missouri). Moreover, efficient and economical administration of the bankruptcy estate will be enhanced by (1) lack of necessity to relitigate matters already decided or rehear evidence heard here, and (2) lack of necessity to supervise business management of Fisher Pen Company (should the Bankruptcy Judge have authority to do so).

33. Moreover, if dissolution of the Illinois corporation Fisher Pen Company is the ultimate remedy applied in the underlying Illinois Action, its liquidation or sale could be more efficiently accomplished by the

Receiver and his agents, all of whom are Illinois residents, because the principal assets of that company are located in Illinois. *Eleven Oak Tower*, 59 B.R. at 629. *Accord In re Old Delmar Corp.*, 45 B.R. 883, 885 (Bankr.S.D.N.Y.1988); *In re 1606 New Hampshire Avenue Associates*, 85 B.R. 298 (Bankr.E.D.Pa.1988); *In re Pickwick Place Limited Partnership*, 63 B.R. 290 (Bankr.N.D.Ill.1986). *See generally In re Bankers Trust*, 403 F.2d 16, 23–24 (7th Cir.1968) (discussing venue considerations in the context of a reorganization proceeding under the Bankruptcy Act of 1898).

### III.  *CONCLUSION*

Pursuant to the foregoing Findings of Fact and Conclusions of Law, an order will be separately entered for abstention from hearing the removed Illinois Action pursuant to 28 U.S.C. § 1334(c)(2).  In the alternative, abstention will be ordered under 28 U.S.C. § 1334(c)(1).  In addition, the Illinois Action will be remanded to the Circuit Court of Cook County, Illinois, Chancery Division, forthwith.  The debtor's motion for change of venue of this adversary proceeding will be denied.

The effect of these orders will be to retain in the Nevada Bankruptcy Judge her option to select any issues she deems appropriate to litigate there.  She can do this through orders granting or denying stay modification on the various issues present herein.  Through this means, she can tailor her supervision of any issues in this case found to be within her jurisdiction and appropriate for her to adjudicate, and she can leave other issues for the State Court.  Accordingly, this ruling does not in any sense preempt the necessary supervisory authority of the bankruptcy judge over the bankruptcy estate.

Should a higher court determine that this Court lacks authority to enter one or more of the orders entered this date, these Findings and Conclusions will stand as recommendations to the District Court.